UNITED STATES of America, Plaintiff,

v.

LINDBERG CORPORATION d/b/a
Harris Metals, Defendant.

No. 85–C–0767.

United States District Court,
E.D. Wisconsin.

July 17, 1987.

On Issue of Possession June 6, 1988.

Nathan A. Fishbach, Asst. U.S. Atty.,
Milwaukee, Wis., for plaintiff.

Joseph C. Niebler, Brookfield, Wis., for
defendant.

## DECISION AND ORDER

WARREN, Chief Judge.

Plaintiff United States of America
("government") filed suit seeking to re-
plevy certain gear parts in the possession
of defendant Lindberg Corporation ("Lind-
berg"). Presently pending before the
Court are motions by both parties for sum-
mary judgment. Based on the following
decision, the Court grants in part and de-

nies in part the government's motion and denies Lindberg's motion.

### I. *Facts*

The parties stipulated to the material facts and they are as follows. On March 1, 1983, the government, acting through the United States Tank Automotive Command, entered into a contract with MTC Gear Corporation. The contract provided that the government would purchase gears from MTC at a price of $604 a gear. The contract also contained a "progress payments clause," which also is known as a "title vesting clause." In relevant part, the clause read:

> (d) Title. Immediately upon the date of this contract, title to all parts; materials, inventories, work in process; ... theretofore acquired or produced by the Contractor and allocable or properly chargeable to this contract under sound and generally accepted accounting principles ... shall forthwith vest in the Government; and title to all like property thereafter acquired or produced by the Contractor and allocable or properly chargeable to this contract as aforesaid, shall forthwith vest in the Government upon acquisition, production or allocation.

The government's contract with MTC was not publicly filed. At no time did the government give notice of its interest in the gears by filing a financing statement.

MTC, in turn, subcontracted with Lindberg for heat treatments on the gears.

MTC closed active business in November of 1983 and is now insolvent. The government, pursuant to its contract, had advanced $945,340 in progress payments to MTC. Of that amount, all but $273,420.20 has been recovered by the government. Lindberg, which performed heat treating from April, 1983, to October, 1983, is owed $224,424.06 for its work.

Lindberg has possession of 265 gears. In May of 1984, Lindberg commenced suit against MTC and the Chase Commercial Corporation in the Circuit Court for Racine County, Wisconsin, seeking foreclosure of a bailment lien against the gears. The Chase Commercial Corporation was the only party which filed a financing statement covering the gears. On July 25, 1984, a final judgment foreclosing the lien was obtained by Lindberg.

In December of 1984, the government notified Lindberg of the government's title to the gears. Lindberg refused a request to surrender the gears. In March, 1985, Lindberg arranged a private sale of the 265 gears to the Profile Gear Corporation, notice of which was given to the government. The government then advised Profile that Lindberg had no right to sell the gears.

On May 3, 1985, the government filed suit seeking possession of the gears.

The government's motion for summary judgment claims that it has vested title in the gears under the provisions of the MTC contract and therefore the government is entitled to possession. Lindberg argues (1) title did not pass to the government; (2) regardless of title, Lindberg still possesses a common law lien on the gears for the $224,424.06 it is owed; (3) equitable defenses of estoppel, waiver and laches prevent return of the gears; and (4) return of the gears would constitute an unjust taking under the Fifth Amendment.[1]

### II. *Vested Title*

The government contends that subsection (d) of the title vesting clause gives it title to the gears. Lindberg counters that under other provisions of the title vesting clause, specifically subsections (a) and (j),[2]

---

**1.** Rule 56 provides that summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Company,* 778 F.2d 1278, 1281 (7th Cir.1985). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The

Court must review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the nonmoving party. *Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir.1987).

**2.** Pertinent parts of subsections (a) and (j) are as follows:

> "(a) ... (1) Unless a smaller amount is requested, each progress payment shall be (i)

the government only obtains title to work for which progress payments were made. Since progress payments were not made to Lindberg, a subcontractor provided for in the contract under subsection (j), the government does not have title to the heat-treated gears.

■ Lindberg's argument requires the Court to find that the government gains title to the gears made by MTC, but then loses title once the gears are sent to Lindberg to be heat-treated. Such a finding would be contrary to the clear provision of subsection (d) that title vests with the government upon *"acquisition, production,* or allocation." (Emphasis added.) Furthermore, that acquisition or production need only be "allocable or properly charge-

able to this contract," not tied directly to the progress payments. Therefore, the Court finds that the government had vested title to the gears.

### III. *Bailment Lien*

Lindberg next argues that regardless of title, it has a valid bailee's lien, under Wisconsin law, by way of its value enhancement of the gears. But Lindberg adds, "The only impediment to Lindberg's assertion of the possessory lien against the Government is the sovereign immunity of the Government." (Defendant's Memorandum in Support of Summary Judgment Motion at 6). Lindberg says the government cannot invoke its sovereign immunity in this case because of the doctrine of recoup-

---

ninety-five percent (95%) ** (see footnote at end of clause) of the amount of the Contractor's total costs incurred under this contract, except as provided herein with respect to costs of pension contributions, plus (ii) the amount of progress payments to subcontractors as provided in (j) below; ...

\* \* \* \* \* \*

"(j) Progress Payments to Subcontractors.

(1) the amount mentioned in item (a)(1)(ii) above shall be the sum of (i) all the progress payments made by the Contractor to his subcontractors and remaining unliquidated, and (ii) unpaid billings for progress payments to subcontractors which have been approved for current payment in the ordinary course of business, when under subcontracts which conform to (2) below.

(2) Subcontracts on which progress payments to subcontractors may be included in the base for progress payments pursuant to paragraph (a) of this clause are limited to those subcontracts in which there is expected to be a long "lead time", between the beginning of work and the first delivery, approximating four months or more for small business concerns and six months or more for firms which are not small business concerns, and in which the provisions regarding progress payments are substantially similar to and as favorable to the Government as this "Progress Payments" clause (except that in the case of those subcontractors which are small business concerns a "Progress Payment" clause substantially similar to 7–104.35(b) may be used). Progress payment rates for subcontractors shall be either the uniform, standard progress payment rate under Appendix E–503 or (if the subcontractor qualifies under Appendix E–530.3) the flexible progress payment rate under Appendix E–530, at the election of the subcontractor. All rights of

the subcontractor with respect to all property to which the Government has title under the subcontract will be made subordinate to the rights of the Government to require delivery of such property to it in the event of default by the Contractor under this contract or in the event of the bankruptcy or insolvency of the subcontractor.

(3) The Government agrees that any proceeds received by it from property to which it has acquired title by virtue of such provisions in any subcontract shall be applied to reduce the amount of unliquidated progress payments made by the Government to the Contractor under this contract. In the event the Contractor fully liquidates such progress payments made by the Government to him hereunder and there are progress payments to any subcontractors which are unliquidated, the Contractor shall be subrogated to all the Government's rights by virtue of such provisions in the subcontract or subcontracts involved *as if all such rights had been thereupon assigned and transferred to the Contractor.*

(4) The billing described in (j)(1)(ii) above shall be paid promptly by the Contractor in the ordinary course of business, not later than a reasonable time after payment of equivalent amounts by the Government to the Contractor.

(5) To facilitate small business participation in subcontracting under this contract, the Contractor agrees to offer and provide progress payments to those subcontractors which are small business concerns, in conformity with the standards for customary progress payments stated in Appendix E of the Defense Acquisition Regulation, as in effect on the date of this contract. The Contractor further agrees that the need for such progress payments shall not be considered as a handicap or adverse factor in the award of subcontracts.

ment and the Tucker Act, 28 U.S.C. § 1346(a)(2). The government counters that its property cannot be seized under state lien laws without consent from the government.

The Fifth Circuit case of *Frederick v. United States*, 386 F.2d 481 (1967), explained the relationship between recoupment and sovereign immunity, under the context of Federal Rule of Civil Procedure 13:

> Rule 13 provides for "counterclaims and cross-claims." A counterclaim under this rule is a claim of one party against an opposing party. It includes common law recoupment and set-off, which is statutory. Common law recoupment was equitable in nature, resting on the principle that it was equitable to settle in one action all claims growing out of the same contract or transaction; it was for defensive use only, and a defendant could not use it as the basis for an affirmative judgment in his favor. Under most statutes set-off at law is a demand asserted to diminish or extinguish plaintiff's demand, which arises out of a transaction different from that sued on, and generally must be liquidated and emerge from a contract or judgment. 3 Moore, Federal Practice, ¶ 13.02 at 8–9 (2d ed. 1966).

> Rule 13 counterclaims include recoupment and set-off....

The distinction between recoupment and set-off has significance where a defendant sued by the United States asserts a claim as to which the government has made no statutory waiver of its sovereign immunity. 3 Moore, Federal Practice, ¶ 13.02 at 9 n. 1. (2d ed. 1966).

Both 13(a) and (b) are qualified by 13(d) in cases against the United States. *United States v. Lashlee et al.*, 105 F.Supp. 184 (W.D.Ark., 1952). Rule 13(d) provides:

> "Counterclaim Against the United States. These rules shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof."

Thus a defendant is either compelled by 13(a), or permitted by 13(b), to counterclaim against the sovereign within the limits to which the sovereign immunity has been given up by the United States by other provisions of law. The waiver can be by statutory consent to be sued or by the institution of the particular action. Our conclusion is that when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims; but the sovereign does not waive immunity as to claims which do not meet the "same transaction or occurrence test" nor to claims of a different form or nature than that sought by it as plaintiff nor to claims exceeding in amount that sought by it as plaintiff.

386 F.2d at 487–488 (Footnotes omitted). *See also EEOC v. First National Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir.1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1980).

■ Therefore, the Court finds that sovereign immunity does not bar Lindberg's defense of recoupment. [Jurisdiction under § 1346 is discussed in Section V of this decision, which discusses Lindberg's amended counter-claim.]

Lindberg further claims that its undisputed bailment entitles it to summary judgment. The Court does not agree. The government still has a valid title and the relationship between that title and Lindberg's lien is in no way made clear by the parties' briefs. The Court is not persuaded that simply because it has jurisdiction over a recoupment defense, Lindberg is entitled to summary judgment.

## IV. *Equitable Defense*

Lindberg has plead estoppel, waiver and laches as affirmative defenses to the government's attempt to regain the gears. It argues that the government, which had access to the identities of MTC's subcontractors, failed to alert Lindberg that its bailment lien would not be honored. In light of the Court's findings under Section III above, the Court declines to consider these issues at this time.

## V. *Amended Pleadings*

▪ Lindberg has moved to amend its counter-claim to seek recovery under the Fifth Amendment for a taking without just compensation. The government did not object to the motion for leave to amend, but rather moved for summary judgment on the counter-claim. The Court grants leave to amend the counter-claim and now considers the summary judgment motion.

Lindberg cites 28 U.S.C. § 1346(a)(2) as granting jurisdiction for its counter-claim. That section reads:

(a) the district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, . . . .

Lindberg has reduced its lien to $10,000 a gear in an attempt to meet the monetary requirement. But the government contends that Lindberg cannot split its counter-claim into 265 separate pacts in order to meet the jurisdictional limit.

The Court agrees with the government. Splitting the counter-claim into 265 parts does not change the factual or legal issues relating to each part. This would not be a case where Lindberg is putting forth distinct legal claims in each part. *See Fitzgerald v. Staats*, 429 F.Supp. 933 (D.D.C. 1977), *aff'd.* 578 F.2d 435 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1978) (two claims under $10,000 with aggregate over $10,000 allowed where claims were distinct). Lindberg's recovery on each gear would rise and fall on the same facts and legal arguments. *See Washington v. Udall*, 417 F.2d 1310, 1320–21 (9th Cir.1969). In essence then, the claim is for 265 times $10,000. The Court therefore lacks jurisdiction over the counter-claim and dismissal without prejudice is appropriate. *See St. Louis Union Trust Co. v. Stone*, 570 F.2d 833, 836 (8th Cir.1978).

## VI. *Summary*

The Court finds:

1. the government has vested title in the gears;

2. the doctrine of sovereign immunity does not bar Lindberg's defense of recoupment;

3. a ruling on Lindberg's equitable defenses would be inappropriate at this time;

4. the Court has no jurisdiction over Lindberg's Amended Counter-Claim; thus it is appropriately dismissed without prejudice.

Accordingly, the government's motion for summary judgment is GRANTED in part and DENIED in part and Lindberg's motion for summary judgment is DENIED.

To discuss further proceedings with the parties, the Court schedules a status conference for *9:45 a.m., Monday, August 3, 1987* in Courtroom 390 of the Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin.

## ON ISSUE OF POSSESSION

This case presents the Court with a dispute over ownership and possession of 265 gears. The United States ("government") has vested title in the gears pursuant to the contract which resulted in their production. Lindberg Corporation ("Lindberg"), a subcontractor, has a bailee's lien as a result of its heat treatment of the gears that was never compensated. Lindberg also has actual possession of the gears. The issue before the Court is whether the vested title of the government defeats the lien

so that possession of the gears must be turned over to the government.

## I. BACKGROUND

The material facts in this case are not in dispute and were summarized by the Court in its July 17, 1987 *Decision and Order.* [1] The government, acting through the United States Tank Automotive Command, entered into a contract with MTC Gear Corporation for the purchase of gears. The contract contained a title-vesting clause that granted title in the gears to the government upon production or acquisition. MTC, in turn, subcontracted with Lindberg for heat treatment of the gears.

MTC closed active business in November of 1983 and is now insolvent. The government, pursuant to its contract, had advanced $945,340 in progress payments to MTC. Of that amount, all but $273,420.20 has been recovered by the government. Lindberg, which performed heat treating from April 1983 to October 1983, was owed $224,424.06 for its work.

Lindberg has possession of 265 gears. In May of 1984, Lindberg commenced suit in the Circuit Court for Racine County, Wisconsin, against MTC and the Chase Commercial Corporation, seeking foreclosure of a bailment lien against the gears. The Chase Commercial Corporation was the only party which filed a financing statement covering the gears. On July 25, 1984, a final judgment foreclosing the lien was obtained by Lindberg.

In December of 1984, the government notified Lindberg of the government's title to the gears. Lindberg refused to surrender the gears. In March, 1985, Lindberg arranged a private sale of the 265 gears to the Prolific Gear Corporation, notice of which was given to the government. The government then advised Prolific that Lindberg had no right to sell the gears.

On May 3, 1985, the government filed suit in this Court seeking possession of the gears. Lindberg answered and counterclaimed. An amended counterclaim was later filed by Lindberg. Also filed were cross motions for summary judgment.

In the Court's July 17 decision, the Court found (1) the government had vested title in the gears; (2) the doctrine of sovereign immunity did not bar Lindberg's defense of recoupment; (3) a ruling at that time on Lindberg's equitable defenses would be inappropriate; and (4) the Court had no jurisdiction over Lindberg's amended counterclaim since it exceeded $10,000. The government's motion for summary judgment was granted in part and denied in part. Lindberg's motion for summary judgment was denied.

Following the issuance of the Court's decision, Lindberg filed a second amended counterclaim and a motion for summary judgment. The government answered the counterclaim, opposed Lindberg's motion for summary judgment, and filed a motion for summary judgment of its own. Lindberg did not respond to the government's motion.

In essence, Lindberg's position is that under Wisconsin law, its bailment lien acts as an affirmative defense to the government's claim for possession of the gears. Foreclosure of the lien is "by action" pursuant to § 779.48(1), Wis.Stats. [2] The government responds that it is well settled that no lien can attach to the property of the government and, furthermore, the

---

1. Hereinafter cited as July 17 *Decision And Order.*

2. Section 779.48(1), Wis.Stats., provides as follows:

    Every person given a lien by ss. 779.43, except s. 779.43(3), or as bailee for hire, carrier, warehouse keeper or pawnee or otherwise, by common law, may, in case the claim remain unpaid for 3 months and the value of the property affected thereby does not exceed $100, sell such property at public auction and apply the proceeds of such sale to the claim and the expenses of such sale. Notice in writing, of the time and place of the sale and of the amount claimed to be due shall be given to the owner of such property personally or by leaving the same at the owner's place of abode, if a resident of this state, and if not, by publication thereof, in the county in which such lien accrues, as a class 3 notice, under ch. 985. If such property exceeds in value $100, then such lien may be enforced against the same by action.

Court lacks jurisdiction over the second amended counterclaim.

## II. ANALYSIS

The issue at hand involves the consequences of the government's vested title on Lindberg's bailee lien. "The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state." *United States v. Allegheny County*, 322 U.S. 174, 183, 64 S.Ct. 908, 913–14, 88 L.Ed. 1209 (1944), *overruled in part by United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958), and companion cases; *In Re Murdock Machine and Engineering Co. of Utah*, 620 F.2d 767, 769–770 (10th Cir.1980). Under federal law, laborers and materialmen can acquire no liens on a public work without the consent of the United States. *Armstrong v. United States*, 364 U.S. 40, 42, 80 S.Ct. 1563, 1565, 4 L.Ed.2d 1554 (1960) (citations omitted); *In Re Murdock*, 620 F.2d at 770. One such "public work" is property or material that has passed to the government by virtue of the terms of a construction or supply contract to which the United States is a party. *See Armstrong*, 364 U.S. at 42–43, 80 S.Ct. at 1565–1566 (*citing United States v. Asonia Brass and Copper Co.*, 218 U.S. 452, 471, 31 S.Ct. 49, 54, 54 L.Ed. 1107 (1910)). In the case at hand, the government obtained vested title in the gears prior to the heat treatment of them by Lindberg. July 17 *Decision And Order*, at 703–04. Thus, the lien on the government's property acquired by Lindberg subsequent to the vesting of title cannot be valid against the government.

This analysis also dooms Lindberg's second amended counterclaim. Wisconsin law cannot be used to secure a lien on the gears once the government has obtained vested title. Lindberg's lien never properly attached.

Lindberg had previously raised issues of recoupment, estoppel, waiver and laches. However, no discussion of these issues was raised by Lindberg following the Court's previous decision and the Court is not sure whether Lindberg still considers them valid. Recoupment, raised in the second amended counterclaim, is based on equitable principles and can form the basis of a counterclaim against the government only if it arises out of the same contract or transaction. *See* July 17 *Decision And Order*, at 704. But the Court has now determined that Lindberg's state law lien is not valid against the government. Thus, the Court does not see how the lien could support a claim against the government for equitable recoupment or even how the lien could support the common law defenses of estoppel, waiver and laches. Lindberg is owed approximately $225,000 not because the government failed to involve itself in the state court proceeding, but because MTC failed to pay for the work for which it subcontracted. In any event, in light of this analysis and in light of Lindberg's failure to respond to the government's second summary judgment motion, the Court is unpersuaded that these equitable issues will defeat the government's claim for possession.

The Court would add that it is not convinced that Lindberg has no claim whatsoever once the gears are turned over to government. The government's property has been greatly enhanced in value without any compensation from the government. If one consider this enhancement "property," then Lindberg may have a Fifth Amendment claim. *See, generally, Armstrong*, 364 U.S. 40, 80 S.Ct. 1563; *In Re Murdock*, 620 F.2d 767. But as this Court already has found, jurisdiction for such a claim does not lie in this Court. *See* July 17 *Decision And Order*, at 705. Therefore, the Court makes no determination on the merits of such a claim and the decision herein is limited to the finding that Lindberg cannot retain possession of the gears.

## III. SUMMARY

The United States gained vested title in 265 gears prior to heat treatment of the

gears by Lindberg. Under federal law, no lien may subsequently attach to the gears without the consent of the United States. Thus, Lindberg has no right to possession of the gears pursuant to a state law bailee's lien. Accordingly, the Court GRANTS the government's motion for summary judgment on its claim for possession of the gears. Furthermore, the Court DISMISSES with prejudice Lindberg's second amended counterclaim.

Judgment shall be entered in favor of the United States. Lindberg shall forthwith give possession of the 265 gears to the United States.