Richard W. BOYD, Plaintiff,

v.

The UNITED STATES of America, the Department of the Treasury, W. Michael Blumenthal, Secretary of the Treasury, and the Federal Reserve Bank of Cleveland, Defendants.

Civ. A. No. 79–687A.

United States District Court,
W. D. Pennsylvania.

Jan. 17, 1980.

Estelle F. Comay, Pittsburgh, Pa., for plaintiff.

Robert J. Cindrich, U. S. Atty., Joel B. Strauss, Asst. U. S. Atty., Pittsburgh, Pa., Raymond A. Nowak, Atty. U. S. Dept. of Justice, Civil Division, Torts Branch, Washington, D. C., for defendants.

## OPINION

WEBER, Chief Judge.

Plaintiff, Richard W. Boyd, was the owner of a 7⅞% Treasury Note, Series A–1986, dated May 17, 1976, due May 16, 1986, No. 10890 for $5,000, which had attached thereto twenty coupons, each valued at approximately $196.88.

The following facts are established beyond dispute between the parties. On or about December 8, 1977, there was a burglary of Plaintiff's home. Plaintiff was away at school and did not discover the theft of this bond from a strong box until he returned on December 28, 1977. On that date, Plaintiff immediately reported the theft to the issuing bank in Harrisburg, and to his local bank in Pittsburgh, Union National. A Union bank official immediately notified the Pittsburgh Branch of the Federal Reserve Bank of Cleveland by telephoning and speaking to one Daniel Robinson. Mr. Robinson advised that the plaintiff contact a Ms. Fawcett of the Correspondence and Claims Division of the Department of Treasury in Washington D.C.

Acting on this advice, the plaintiff wrote to Ms. Fawcett on January 7, 1978, reporting the theft and requesting information as to how to go about having the note replaced.

On January 11, 1978, the note was presented for payment by one James Miller, at the Bellevue branch of Pittsburgh National Bank. Before cashing it, a Mr. Sullivan of the Bank's Security and Safety Dept. called the Pittsburgh Branch of the Federal Reserve Bank of Cleveland to determine whether the note had been reported as stolen. He was orally informed by the Federal Reserve that it had not been reported as stolen, even though they had been notified of the theft two weeks earlier. Based on this information, Pittsburgh National Bank cashed the note by crediting the account of James Miller.

Unaware that the note had been cashed, Mr. Boyd called Ms. Fawcett of the Department of Treasury to find out the status of his letter of Jan. 7. Ms. Fawcett told him the letter had been received and was being acted upon.

On January 31, 1978, the Department of Treasury responded to Mr. Boyd's letter by sending him the necessary forms to be completed for bond replacement. The forms were completed by Feb. 22, 1978. The note was placed on the stolen list on Feb. 24, 1978.

On March 8, 1978, the Department of Treasury sent a letter to Boyd informing him that the evidence submitted was sufficient to warrant the granting of relief upon a filing of a proper bond of indemnity. There is no evidence that such a bond was ever filed. On May 23, 1978, the Department wrote another letter to Mr. Boyd, informing him that since the note had already been honored on an authorized trans-

action, that Boyd's claim could no longer be considered.

This action was instituted on May 18, 1979. The plaintiff alleges that the Federal Reserve Bank was negligent in failing to report promptly the theft of the note, causing the note to be paid to one not the rightful owner, and causing the plaintiff damage under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., jurisdiction for such a claim being pursuant to 28 U.S.C. § 1346(b). The plaintiff also alleges that he was unreasonably denied the relief available under 31 U.S.C. § 738a, jurisdiction for such a claim being pursuant to 28 U.S.C. § 1346(a)(2), the Tucker Act. The plaintiff requests relief in the form of replacement of the note or compensation for the loss of the note.

The Defendants filed a Motion to Dismiss on the grounds of lack of jurisdiction and failure to state a claim on which relief can be granted. The motion contained evidentiary material and so the court ordered that the Motion to Dismiss be considered as one for Summary Judgment, and disposed of according to *Fed.R.Civ.P.* 56.

The defendant claims that neither the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671, *et seq.*, nor the Tucker Act, 28 U.S.C. § 1346(a)(2), nor 31 U.S.C. § 738a affords any jurisdictional basis for this suit as against any of the named defendants.

■ First, the defendant claims lack of jurisdiction over certain of the named defendants under either the FTCA or the Tucker Act. Only the United States Government itself is amenable to suit under either of these statutes. Employees and specific government agencies are not proper defendants. *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252, 1256 (2nd Cir. 1975); *Morris v. United States*, 521 F.2d 872, 874–75 (9th Cir. 1975); *Morano v. United States Naval Hospital*, 437 F.2d 1009, 1010 (3d Cir. 1971).

The court agrees and therefore, some of the named defendants, the Department of Treasury, W. Michael Blumenthal, Secretary, and the Federal Reserve Bank of Cleveland are not proper parties and this action must be dismissed as to them. This, however, in no way alters the availability of suit against the United States since they were included as a named defendant and are the proper party.

■ Second, the government claims that 31 U.S.C. § 738a alone does not provide a cause of action and so does not confer subject matter jurisdiction. That section authorizes the Secretary of the Department of Treasury to provide relief on account of loss or theft of any security identified by number and description. This statute provides the basis for the plaintiff's action under the Tucker Act for breach of contract and is a necessary corollary of the claim. In *Bodek v. Dept. of Treasury, Bureau of Public Debt*, 532 F.2d 277 (2nd Cir. 1976), both the District Court and the Circuit Court found no jurisdictional problems with a suit brought under 31 U.S.C. § 738a, finding that jurisdiction was conferred by the Tucker Act, 28 U.S.C. § 1346(a)(2), 532 F.2d at 279, f. 7.

Third, the defendant contends that this court lacks jurisdiction under the FTCA on the grounds that plaintiff has failed to satisfy all the preconditions to suit set out in 28 U.S.C. § 2675(a), requiring that the claimant must first have presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

The government claims that plaintiff's letter to Ms. Fawcett of January 7, 1978, requesting information as to how to have the note replaced does not qualify as an administrative claim under 28 C.F.R. § 14.-2(a). That section requires an executed Standard Form 95 or "other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property . . . alleged to have occurred by reason of the incident." The government argues that the letter fails as a claim since it is only a "request", not a demand, and because it fails to satisfy the sum certain requirement.

■ A total reading of the letter would show that it does meet those requirements. The government was made aware of Boyd's purpose of seeking replacement of the note. The note and its value was specifically described in the letter. This would qualify as a sum certain since the government could calculate from that information the total value of the note and its coupons. Any other interpretation of the letter would be putting form over substance.

■ Furthermore, even if the letter did fall short as an administrative claim, the Department of Treasury Form PD 1022–1, Report/Application for Relief on Account of Loss, Theft or Destruction of United States Bearer Securities (individuals), which was completed by February 22, 1978, would clearly satisfy the requirements for an administrative claim. The very fact that it is the basis on which the Department of Treasury makes its decision on whether or not to grant relief shows that the Department considers it to be a claim. Also, the form itself reads "the undersigned owner hereby requests the Secretary of the Treasury to grant relief authorized by law and the applicable regulations" . . .

Therefore, a claim was clearly made to the Department of Treasury, the appropriate agency, by Boyd, in conformance with 28 C.F.R. § 14.2(a).

The government also argues that even if the letter did qualify as an administrative claim, this suit is time-barred under 28 U.S.C. § 2401(b), which requires that tort suits be brought within 6 months of final agency denial of the claim. The government contends that Boyd's claim was finally denied by the Department of Treasury letter of May 23, 1978 which indicated that the claim could no longer be considered since the note had been honored in an authorized transaction. Although the government was highly concerned about whether Boyd's letter had conformed with the regulations, its own final agency denial failed to conform with the regulations. 28 C.F.R. § 14.9 states that a written denial "shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit

in an appropriate District Court not later than 6 months after the date of mailing of the notification." The government's letter of May 23rd contains no such statement. This failure of the government to make plaintiff aware of his rights prevents this communication from being a proper final agency denial. Here a possible plaintiff may lose his cause of action by failing to comply with federal regulations of which he has no knowledge. Boyd has actively pursued his cause and has tried to work within the government's guidelines. He should not be denied further resolution of his claim where the government failed in its responsibility to him.

■ Since there has been no proper final agency denial within 6 months of the claim as required by 28 U.S.C. § 2675, the plaintiff has the right at any time of his own option to deem such a failure to be a final agency denial. This is precisely the result allowed in *Mack v. United States Postal Service*, 414 F.Supp. 504 (D.C.Mich.1976). In that case, an agency had not acted on the plaintiff's claim. The court found that the denial could not be deemed to have occurred six months after the date of the claim. Such a result would be too harsh. The court said that 28 U.S.C. § 2675(a) and the statute of limitations of 28 U.S.C. § 2401 are to be read together. 28 U.S.C. § 2675(a) provides:

"The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

The court in *Mack* found that this gave the claimant the option to pick the time on which the agency action was deemed to be finally denied.

"If so, does the phrase 'any time thereafter' permit the claimant to wait any reasonable period of time before deeming his claim denied and filing a federal lawsuit? While this interpretation may seem to be the equivalent of no limitation, it appears to be the most reasonable reading of the statutory scheme. The alternative of

treating all unanswered claims as denied six months after they are filed and commencing the six-month period for filing suit under § 2401(b) at that time is far too harsh for the claimant whose faith in the administrative process leads him to wait more than six months for the resolution of his claim." 414 F.Supp. at 507.

The plaintiff was entitled to treat this failure to be a final agency action at any time thereafter and is not barred by the statute of limitations in § 2401(b).

■ Therefore, this court does have jurisdiction over this suit under the Federal Tort Claims Act. The questions of negligence therefore remain to be resolved.

Finally, the government claims lack of jurisdiction against the United States under the Tucker Act, 28 U.S.C. § 1346(a)(2). That statute allows suits against the government for less than $10,000 based upon a claim of breach of contract. The defendant claims there has been no breach, that the government has conformed with the regulations and so there is no actionable complaint.

■ The applicable regulations controlling government securities are an implied part of the contract between the government issuer and the purchaser of the security. *Bodek v. United States Postal Service*, 532 F.2d at 279, f. 7; *Wolak v. United States*, 366 F.Supp. 1106, 1109–1110 (D.C. Conn.1973). The pertinent statute here is 31 U.S.C. § 738a, which allows the Secretary of Treasury to grant relief for the loss or theft of any security; and 31 U.S.C. § 738a(b), which requires that a bond of indemnity be posted before a duplicate bearer security will be issued unless it has been proven to have been destroyed. 31 C.F.R. § 306.110–113, in particular, § .112, provides for replacement of the original security.

The plaintiff claims a breach of these regulations by the Department of Treasury's failure to grant relief for the theft of his bearer security. Initially, the Department itself in its letter of March 22, recognized the validity of the plaintiff's claim and indicated it would issue a replacement note upon the posting of an indemnity bond. However, it later reversed its position when it learned that the note had been honored, and refused relief.

The question is whether, in this situation, under these regulations, the Secretary of Treasury was under a contractual obligation to grant relief to the plaintiff. Under 31 U.S.C. § 738a and the accompanying regulations, 31 C.F.R. § 306.110, the Secretary may grant relief according to such regulations as he may provide. While there is a certain amount of discretion in the Secretary, however, there is no indication that the plaintiff failed to fulfill any of the regulations which condition the granting of relief. In fact, the Department itself originally found that plaintiff had a valid claim for relief.

The Department's reason for refusing to grant relief is that the note had already been honored in an authorized transaction. The defendant contends that the government was under an obligation to honor this security when presented for payment and, therefore, there can be no breach of contractual duty to the plaintiff by reason of its payment.

Defendant claims that under the regulations, the government is required to pay a bearer security to the party in possession when that party presents it for payment. This ease in negotiation is one of the attractive qualities of this kind of note.

Although payment of this note to bearer is the normal rule, there is no requirement that the government pay the note when it has knowledge that the note has been stolen. The government's procedure of maintaining a "stolen list" is designed to guard against the payment of securities to improper parties. Once the government is given notice of the theft its obligation to pay the note immediately on demand would be suspended. The government cannot be required to cash stolen notes. Thus, it appears that the government did not have to honor the note as a matter of law, and so further issues of whether the government acted within its contractual duty to plaintiff still remain to be resolved.

The defendant also claims that prior non-payment of the note is a prerequisite to the granting of relief for stolen securities. Thus, it claims, the government was justified in refusing such relief to the plaintiff. The defendant does not provide any citations to any statute or regulation which indicates that non-payment of the note is an absolute precondition to the granting of relief. Instead, this contention is founded on the idea that the government cannot be left open to double liability which might result from the issuance of duplicate securities.

The government has already made provisions to protect itself against the possibility of dual liability by requiring notice of loss and the posting of a bond of indemnity before a duplicate bearer security will be issued, unless the claimant is able to show that the first security was destroyed. 31 C.F.R. § 306.110. (See Senate Report No. 92–37 in 1971 U.S.Code Cong. & Admin. News, p. 1065, for legislative history of this provision).

█ The problem of dual liability cannot be asserted as a valid defense to deny relief where the government may be at fault in the situation which is creating the dual liability. The government cannot be allowed to breach its own obligations, improperly pay a security, and then refuse to issue a duplicate to the innocent rightful owner solely on the grounds of double liability. Such a result would undermine the overall scheme that makes government bonds an attractive commodity. Lenders must be assured of the availability of relief when problems arise that are not of their own creation.

Finally, although the Department of Treasury does have a certain amount of discretion in adopting Regulations governing granting relief, in *Wolak v. United States*, 366 F.Supp. at 1113, the court points out that the granting of discretion to the Department was not intended to relieve the government of its pre-existing duty to provide such relief.

█ The final matter is whether the plaintiff can be required to post a bond of indemnity as a precondition to the granting of relief. The regulations require that such a bond be posted wherever the note has not been shown to be destroyed. Although the note here has not been destroyed, there is no need to require a bond to protect the government for double liability in the future. The government already knows where the original bond is. It has been honored and is no longer in the market. The issuance of a duplicate note under these circumstances would not open up the government to dual liability on the note any more than it may already be as a result of this suit.

Therefore, the Defendants' Motion for Summary Judgment is denied. This court has jurisdiction over this suit against the United States under both the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and the Tucker Act, 28 U.S.C. § 1346(a)(2). Under *Fed.R.Civ.P.*, 56, the above opinion shall determine the issues of fact to be offered at the trial.