USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1416 VICTOR ZELMAN and BETTY ZELMAN, Plaintiffs, Appellants, v. RICHARD L. GREGG, COMMISSIONER OF THE PUBLIC DEPT., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Cyr, Boudin and Stahl, Circuit Judges. ______________ ____________________ Victor Zelman and Betty Zelman on brief pro se. _____________ ____________ Stuart E. Schiffer, Acting Assistant Attorney General, Jay P. ___________________ _______ McCloskey, United States Attorney, Barbara C. Biddle and Deborah Ruth _________ __________________ ____________ Kant on brief for appellees. ____ ____________________ February 17, 1994 ____________________ BOUDIN, Circuit Judge. This is a suit by the owners of _____________ federal savings bonds that were allegedly stolen and redeemed without the owners' permission. The district court dismissed the suit on the ground that it had been brought in the wrong court. With certain clarifications, we affirm. I. In this case Victor and Betty Zelman, a husband and wife residing in Maine, brought suit pro se in district court _______ against the Secretary of the Treasury and the Commissioner of the Public Debt. Their complaint alleged that six series E bonds issued to one or both of the Zelmans, currently worth (in total) more than $10,000, had been stolen from them and that the government was now refusing to issue replacements.1 Claiming that the government had breached the contractual rights reflected in the bonds, the Zelmans sought an injunction to require the issuance of replacements. Prior to bringing suit, the Zelmans had requested replacements from the Bureau of Public Debt which administers the savings bond program for the Treasury. In reply the Bureau told the Zelmans the following: first, government records showed the bonds to have been redeemed more than ten ____________________ 1The series E bonds assertedly stolen from the Zelmans appear to have been registered bonds rather than bearer bonds. See 31 C.F.R. 315.5 ("Savings bonds are issued only ___ in registered form. . . . The registration is conclusive of ownership, except as provided in 315.49 [relating to correction of error in registration]."). -2- -2- years ago; second, government regulations create a presumption that redeemed bonds have been properly paid if no claims have been filed within ten years of redemption; and third, since the government now retains no other records after ten years has elapsed following redemption, "no details regarding . . . redemption [of the Zelmans' bonds] can be furnished." Broadly speaking and with certain qualifications, government bonds are viewed as contracts between the government and the owners, whose terms are fixed by statutes, regulations and offering circulars. Estate of Curry v. _________________ United States, 409 F.2d 671, 675 (6th Cir. 1969); Wolak v. _____________ _____ United States, 366 F. Supp. 1106, 1111-12 (D. Conn. 1973) _____________ (collecting and quoting numerous cases). In response to the Zelmans' suit, which explicitly alleged a breach of contract, the U.S. Attorney asserted that the district court lacked subject matter jurisdiction over the suit. This is so, the U.S. Attorney argued in a motion to dismiss, because contract claims against the United States for amounts of over $10,000 may be brought only in the Claims Court. 28 U.S.C. 1346(a)(1), 1491(a)(1). The district court agreed with the government, stating that "since this is an action for breach of contract and more than $10,000 is at stake, the Tucker Act provides that jurisdiction exists only in the . . . Claims Court . . . ." -3- -3- Noting that no request for such a transfer had been made, see ___ 28 U.S.C. 1631, the district court dismissed the case for want of jurisdiction and without prejudice to a new action in a court with jurisdiction. The Zelmans have sought review in this court, arguing that the dismissal was improper and that redress apart from damages should be afforded to them. II. On appeal, the Zelmans first argue that each bond should be treated as a separate contract and that, individually, each such claim in this case is under $10,000 and within the jurisdiction of the district court. The government responds that there is "some authority" for the proposition that separate claims for under $10,000 should not be aggregated;2 but it says that the district court still "lacked jurisdiction" to afford the only remedy sought by the Zelmans in this case, namely, an injunction directing re-issuance of the bonds. Indeed, we have held that "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 3 (1st ____________________________ _______ Cir. 1989). ____________________ 2See e.g., Baker v. United States, 722 F.2d 517, 518 ___ ____ _____ ______________ (9th Cir. 1983); United States v. Louisville & Nashville _____________ _______________________ R.R., 221 F.2d 698, 701-03 (6th Cir. 1955); Sutcliffe Storage ____ _________________ & Warehouse Co. v. United States, 162 F.2d 849, 851-52 (1st _______________ _____________ Cir. 1947); see also 14 C. Wright, A. Miller & E. Cooper, ________ Federal Practice and Procedure, 3647 at 287 (2d ed. 1985). ______________________________ -4- -4- One could argue about whether "jurisdiction"--a term with many shades of meaning--is lacking if the complaint has asserted a colorable claim (in this case, for breach of contract) but named an unavailable remedy. But the Zelmans did not argue to the district court that the claims may be disaggregated (although two sentences in their memorandum hinted at such an argument) and even now the government does not quite concede the point. We are reluctant to overturn the district court in a civil suit based on a disaggregation theory not raised in that court. Indeed, the government does not confess error on this issue and may dispute or hope to distinguish the disaggregation precedents. Accordingly, we are disposed to affirm the district court but without prejudice to the Zelmans' filing of a new suit in the same district court if they wish to pursue their disaggregation theory. We say "if" because the Claims Court has unquestioned jurisdiction, assuming that the Zelmans are now prepared to accept damages as their relief. The Zelmans might prefer to refile their suit in the Maine district court or they might conclude that the Claims Court, although more distant, is a preferable forum in order to avoid another possible round of jurisdictional controversy. The initial choice is theirs. But we have something more to say about the course of this matter. The pages of correspondence between the Zelmans -5- -5- and the Treasury's Bureau of the Public Debt will be familiar, at least as a prototype, to anyone who has ventured to assert a money claim against a public body. Although the Bureau's letters to the Zelmans (and later to their senator) may well be accurate in a literal sense, most lay readers would likely believe that the Bureau had determined the Zelmans' claim to be without merit. The critical sentences, repeated in several of the letters, are these: [T]he regulations governing savings bonds provide that bonds for which no claim has been filed within 10 years of the recorded date of redemption will be presumed to have been properly paid. At that time, the payment records of such bonds are destroyed and from then on there is no data available from which photographs or other details regarding the redemption can be obtained. The critical phrase, "presumed to have been properly paid," is taken verbatim from the current Treasury regulations, 31 C.F.R. 315.29(b), although the regulation in question is not cited in the letters. The word "presumed" has more than one meaning but it quite often refers to a rebuttable presumption; that is, when the predicate fact is proved (here, that the bonds were redeemed by someone over ten years ago), then some other "presumed" fact (here, that the bonds were redeemed by their real owners) will be taken to be true--unless and until the party disputing the presumed fact offers substantial countervailing evidence. See Fed. R. ___ -6- -6- Evid. 301; 2 J. Strong, McCormick on Evidence 342 (4th Ed. _____________________ 1992).3 Assuming for purposes of discussion that the regulation refers to a rebuttable presumption, then quite likely the Zelmans have the burden of offering evidence to establish that the bonds were stolen from them and if redeemed were redeemed without their permission. They might have such a burden even without the presumption. The Zelmans may be hindered because the Bureau has apparently disposed of the records of redemption apart from recording the fact of redemption. Still, a factfinder might well believe the Zelmans, especially if they can corroborate the theft of the bonds. Stolen bonds are unlikely to have been redeemed by their rightful owner. If the Bureau regards the presumption as rebuttable, one might expect at least one of its letters to say this to the Zelmans in plain language and, further, to tell them what process (a review board, a court) is available to get a decision on the factual issue. If instead the Bureau thinks ____________________ 3Occasionally the term "presumption" is used to indicate that the presumed fact is conclusively or irrebuttably presumed and the opponent will not be allowed to show the contrary. See e.g., Stanley v. Illinois, 405 U.S. 645, 656- ___ ____ _______ ________ 57 (1972) (voiding irrebuttable statutory presumption); 2 McCormick at 451. And, to make matters even more confusing, _________ the term is sometimes used to refer to a mere permissible inference. See County Court of Ulster County v. Allen, 442 ___ _____________________________ _____ U.S. 140, 157 (1979) (referring to "an entirely permissive inference or presumption, which allows--but does not require"--an inference of one fact from proof of another). -7- -7- that the regulation creates an irrebuttable presumption--a kind of mini-statute of limitations--then it ought to have said so plainly to the Zelmans. To leave the matter in a state of confusion is not an attractive posture for an agency that must face this very issue with some frequency. The government is a huge body employing millions of people, and needs to use regulations, routines and form letters. It is also right that its servants should be chary about claims against the Treasury, claims that are often ill- founded and sometimes dishonest. But it is not too much to ask that the Bureau of the Public Debt give a plain statement of its position--and even useful directions--to those citizens who have lent the government money, seek repayment, and have very little idea how to navigate through the forest of rules and procedures. III. The Zelmans' filings, both in the district court and in this court, argue variously that case law supports equitable relief; that it is a violation of the due process clause to apply regulation 315.29(b) as a statute of limitations to bonds sold before the regulation was promulgated; and that the records concerning the redemption should not have been destroyed since without them the Zelmans cannot prove their case. These arguments do not alter our view that the district court should be affirmed. -8- -8- The Zelmans' argument for equitable relief rests on the ground that the government had an obligation, under the law as it existed when the bonds were purchased, to replace _______ stolen bonds that have been improperly redeemed. This argument is difficult to appraise because the text of the provisions relied upon by the Zelmans is not quoted by the Zelmans, and the statutes and regulations to which the Zelmans cite do not clearly set forth the obligation that the Zelmans impute.4 Whether such an obligation might be made out, however, is an issue we need not determine. On the Zelmans' own version of the matter, the obligation on which they rely existed under statutory or regulatory language that has since been repealed. Although their position is not clearly explained, they may be arguing that the procedures and remedies that applied in 1968 and 1969 were incorporated into the bond contracts by implication or by the offering circular (which is not, however, quoted or cited). See generally Wolak, 366 F. Supp. at 1113-14. If _____________ _____ this is their argument, then the Zelmans are back to arguing ____________________ 4Former 31 U.S.C. 738a(a) provided that the Secretary of the Treasury, when it is "clearly proved to the satisfaction of the Secretary" that non-bearer securities of the United States have been lost or stolen, "shall" re-issue a security "which has not matured or become redeemable" and shall make payment on one that "has matured or become redeemable." This section was supplanted in 1971 by one that said that the Secretary had authority to grant relief for loss or theft of government securities, 85 Stat. 74; the current comparable version is 31 U.S.C. 3125(a) (The Secretary . . . may provide relief . . .)". -9- -9- that the government has breached its contract and that equitable relief should be afforded for this breach. The difficulty is that it is settled in this circuit that equitable relief cannot be obtained on contract claims against the government, Coggeshall, 884 F.2d at 3, with very __________ narrow statutory exceptions that are not here relevant. 28 U.S.C. 1491(a)(2), (3). This rule may not be followed everywhere and it can be especially hard to apply where contract claims are mingled with other claims not dependent on contract. See, e.g., Transohio Savings Bank v. Director, ___ ____ ______________________ _________ Office of Thrift Supervision, 967 F.2d 598 (D.C. Cir. 1992). ____________________________ However, the rule remains the law of this circuit and may not normally be reconsidered except by the court en banc.5 _______ The Zelmans' next argument is that it violates due process for the government to impose, through regulation 315.29, a ten-year statute of limitations (measured from an illegal redemption) on requests by rightful owners for replacement or payment of their stolen bonds. No such regulation existed, say the Zelmans, when their bonds were purchased; and (they say) their bonds have been extended by ____________________ 5As already noted, the Zelmans have not pointed to any law currently in force that gives them a statutory right to re-issuance of the bonds (as opposed to damages based on breach of contract). Thus we have no occasion to consider whether or when--despite the Tucker Act--a district court might be able to grant injunctive relief, with monetary implications, based on statute rather than contract. Compare _______ Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989); Hahn v. ____ _______ ____ United States, 787 F.2d 581 (3d Cir. 1985). _____________ -10- -10- the Treasury for thirty years past their original maturity so the Zelmans had no earlier reason to inquire into their theft or illegal redemption. It will be time enough for the courts to consider such a constitutional attack on the regulation if and when the government endorses the reading of the regulation as a statute of limitations and if and when the courts accept that reading. As we have already noted, the regulation on its face is susceptible to a quite different reading, namely, that it creates a rebuttable presumption (starting ten years after a redemption) that the bonds were lawfully redeemed. This in turn would leave it open to the rightful owner to show that the bonds were lost or stolen and were not redeemed by the rightful owner. The Zelmans, appearing pro se, may misunderstand what is ______ entailed in a showing of this kind. It would not be their automatic obligation to establish the details of the theft or identify the party who wrongfully redeemed the bonds. One might expect them to shed some light on where the bonds were kept, how they might have been purloined, why it took so long to discover the loss, whether the loss was reported to the police, and what investigations were made; but these are matters that go to plausibility and corroboration. If the Zelmans tell a plausible story, nothing prevents the trier of fact from accepting it. -11- -11- As for the details of the redemption, all that a trier of fact would likely demand from the Zelmans is testimony that they did not redeem the bonds, did not authorize anyone to do so, and have no idea who did redeem the bonds. The fact that the government has destroyed the records is more likely to inconvenience it rather than the Zelmans, assuming that they have a plausible story to tell. Of course, we are proceeding on the arguendo premise that the regulation is not ________ a statute of limitations; but if it is a statute of limitations, the destruction of the records is probably irrelevant anyway. We do not know whether the Zelmans will refile their contract claim lawsuit in the district court or in the Claims Court. But we trust that, once a forum with jurisdiction is chosen, government counsel will pay some mind to the question whether the Zelmans have a valid claim against the government or how to get this issue decided at minimum expense and without further delay. Thus far, this case is not much of an advertisement for savings bonds. The judgment of the district court is affirmed without ________ prejudice to the filing of a new suit for damages either in the Claims Court or in the district court (subject to resolution of the disaggregation issue). No costs. -12- -12-