Victor **ZELMAN, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 94–143–DMC.**

United States District Court, D. Maine.

April 7, 1995.

Richard L. O'Meara and Barbara T. Schneider, Murray, Plumb, & Murray, Portland, ME, for plaintiffs.

Jack Kaufman and Sidney P. Levinson, U.S. Dept. of Justice, Washington, DC, for Government.

## MEMORANDUM DECISION ON DEFENDANT'S MOTION TO DISMISS [1]

DAVID M. COHEN, United States Magistrate Judge.

This proceeding represents the second attempt by plaintiffs Victor and Estelle Zelman to obtain judicial relief following the government's refusal to replace six United States savings bonds that were purchased by Mrs. Zelman in 1968 and 1969 and which the plaintiffs now contend are lost. In *Zelman v. Gregg*, 16 F.3d 445 (1st Cir.1994), the First Circuit upheld this court's dismissal without prejudice of the plaintiffs' previous claim

---

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order the entry of judgment.

seeking an injunction requiring the Secretary of the Treasury and the Bureau of the Public Debt to replace the bonds. *Id.* at 447. In their present six-count complaint, the plaintiffs again assert that the government has breached its contract with them, but this time they eschew equitable relief in favor of seeking monetary damages in the face amount of the six bonds plus accrued interest as well as their costs. The government has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(3) and 12(b)(6). I deny the motion.

## I. Background

A full appreciation of the present posture of this litigation requires some retracing of the steps taken by the plaintiffs in their quest to replace or obtain payment on the missing bonds. As the First Circuit recounted it,

> [p]rior to bringing suit, the Zelmans had requested replacements from the Bureau of Public Debt which administers the savings bond program for the Treasury. In reply the Bureau told the Zelmans the following: first, government records showed the bonds to have been redeemed more than ten years ago; second, government regulations create a presumption that redeemed bonds have been properly paid if no claims have been filed within ten years of redemption; and third, since the government now retains no other records after ten years has elapsed following redemption, "no details regarding ... redemption [of the Zelmans' bonds] can be furnished."

*Id.* at 446 (ellipsis and brackets in original). The plaintiffs then brought their original suit and this court dismissed the complaint for want of jurisdiction, holding that contract claims against the United States for amounts in excess of $10,000 may be brought only in the Claims Court pursuant to the relevant provisions of the Tucker Act, 28 U.S.C. §§ 1346(a)(1) and 1491(a)(1). *Id.* On appeal, the plaintiffs argued for the first time that each bond should be treated as a separate claim, each of which involves less than $10,-000, and that the district court therefore had jurisdiction. *Id.* Expressing a reluctance to overturn this court's judgment based on a disaggregation theory not pursued at the trial court level, the First Circuit affirmed the dismissal but specifically without prejudice to the plaintiffs' right to file a new complaint to pursue such an argument. *Id.* at 447.

Following the suggestion of the First Circuit, the plaintiffs filed the instant complaint and included therein a separate count for each bond.[2] According to the complaint, the six lost savings bonds were among 46 purchased by the plaintiffs between 1968 and 1987. The plaintiffs further allege that the bonds were temporarily stored in their home pending their removal to a bank safe deposit box in New York and later in a similar safe deposit box in Maine, and that they noticed six of the bonds were missing upon conducting an inventory in 1990. According to their complaint, the plaintiffs neither redeemed the six bonds themselves nor authorized anyone else to do so; it is the plaintiffs' position that if the bonds were redeemed they have no knowledge of who might have done so.

Collectively, the bonds carry a face value of $6,000; however, as noted by the First Circuit, the present redemption value of these instruments exceeds $10,000.[3] *Zelman*, 16 F.3d at 446. Accordingly, prior to answering the complaint the government moved pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss the action for want of subject matter jurisdiction, contending that the attempted disaggregation of the plaintiffs' claims was mere "artful pleading" and that, pursuant to the Tucker Act, the Claims Court has exclu-

---

**2.** At issue are the following Series E savings bonds: Number M 90 058 510E, in the face amount of $1,000, purchased on or about May 27, 1968; Number M 90 496 182E, in the face amount of $1,000, purchased on or about September 4, 1968; Number M 90 496 184E, in the face amount of $1,000, purchased on or about November 4, 1968; Number M 90 496 187E, in the face amount of $1,000, purchased in approxi-

mately January 1969; Number M 90 507 355E, in the face amount of $1,000, purchased in approximately March 1969; and Number M 90 507 356E, in the face amount of $1,000, purchased in approximately May 1969.

**3.** Indeed, as of March 1, 1995 the redemption value of the bonds was $27,068.

sive jurisdiction over such a controversy. *See* Memorandum of Points and Authorities in Support of Motion to Dismiss of United States of America (Docket No. 4) at 1–2. The motion did not press any other grounds for dismissal. The court denied the motion. The government subsequently answered the complaint and now presses a second motion for dismissal.

## II. Venue

In their complaint, the plaintiffs state that they are residents of Hiram, Maine and allege that this district is the proper venue for this litigation pursuant to 28 U.S.C. § 1391. In relevant part, section 1391 provides that when the United States is a defendant in a civil action, the proper venue is the judicial district in which the plaintiff resides if no real property is involved in the action. *Id.* at subsection (e)(3). Venue is also proper in a district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Id.* at subsection (e)(2).

The government contends this district is not the proper venue because the plaintiffs are actually residents of Florida, and the government's Rule 12(b)(3) motion accordingly seeks dismissal of the complaint on that basis.[4] Although the plaintiffs maintain a home in Hiram, Maine, they do not challenge the government's contention that they are residents of Florida. Rather, they contend that the government's Rule 12(b)(3) motion must be denied as untimely. In the alternative, they argue that venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in Maine.

■ I reject the latter contention. The plaintiffs' position is that errors and omissions took place in Maine because they corresponded with the Bureau of the Public Debt from their home in Hiram. However, it is clear that the contract at issue was made in New York (where the bonds were sold), the

allegedly improper redemption of the bonds took place in New York, and the government made the decision to refuse payment to the plaintiffs at the headquarters of the Bureau of the Public Debt in West Virginia. No events or omissions giving rise to the complaint occurred in Maine.

■ The plaintiffs' former contention, that the government has waived the defense of lack of venue, is persuasive. Rule 12(g) provides that a party who makes a Rule 12 motion

> but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, ... shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.[5]

Further, Rule 12(h)(1) unambiguously provides that a defendant waives the defense of improper venue if that defense "is omitted from a motion in the circumstances described in subdivision (g)." The government concedes that it did not raise the venue issue when it filed its initial Rule 12(b)(6) motion to dismiss, but contends that it should not be treated as having waived its venue defense because such a defense was not "then available" to them within the meaning of Rule 12(g). According to the government, at the time of its original motion to dismiss it had no reason to believe the plaintiffs were not residents of Maine, and only learned that the plaintiffs are residents of Florida when they stated as much at depositions conducted on December 19, 1994. This argument lacks merit because the plaintiffs' complaint contains factual assertions that could have alerted the government that their residency might be at issue. *See* Complaint at ¶¶ 14–15 (describing plaintiffs' sale of their residence in Great Neck, New York and their purchases of homes in Hiram, Maine and Boynton Beach, Florida). Assuming that the

---

4. In the alternative, the government seeks transfer of this action to the District of West Virginia, apparently because the offices of the Bureau of the Public Debt are located in that district.

5. Subdivision (h)(2) refers to defenses based on the failure to state a claim upon which relief can be granted and the failure to join an indispensable party. Neither of these defenses is at issue here.

facts of the plaintiffs' residence would not have been clear at the time of the government's initial motion to dismiss, the proper course to preserve the venue defense would have been to assert it and advise the court that further factual development on the subject was necessary. *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure* (1990), § 1352 at 265 (court may hold Rule 12(b)(3) motion in abeyance pending development of facts concerning proper venue).

At oral argument on the pending motion the government cited *Glater v. Eli Lilly & Co.*, 712 F.2d 735 (1st Cir.1983), in support of its position. *Glater* is distinguishable from the circumstances of the present case. *Glater* was a personal injury action in which the plaintiff alleged in her complaint that she was a resident of New Hampshire and the defendant answered that it lacked knowledge or information sufficient to form a belief as to the plaintiff's residence. More than thirteen months after the filing of the complaint, the defendant learned that the plaintiff actually resided in Massachusetts. This fact was significant not only for venue purposes, but because it raised the issue of the court's personal jurisdiction over the defendant.[6] The trial court denied the defendant's Rule 15(a) motion to amend its complaint to include the defenses of lack of personal jurisdiction and improper venue, but granted the defendant's post-answer motion to dismiss and held that the defendant's original answer was sufficient to raise the jurisdictional issue because it constituted a denial of the plaintiff's averment that she was a resident of New Hampshire. On appeal, the First Circuit noted that a defendant wishing to raise lack of personal jurisdiction or improper venue as a defense "must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading." *Id.* at 738 (citations omitted). But the court concluded that the

personal jurisdiction defense was not "then available" within the meaning of Rule 12(g) at the time of the first defensive move. *Id.* This was so because "Glater's complaint did not put [the defendant] on notice that her New Hampshire domicile was at least questionable. [The defendant] could not waive a defense involving facts of which it was *not*, and could not have been expected to have been, aware." *Id.* (citation omitted).[7]

■ By contrast, the plaintiffs in the instant case put the government on notice that Maine domicile was at least questionable. Their complaint forthrightly discloses that they maintain homes in both Florida and Maine. Other courts have declined to apply the non-waiver principle articulated in *Glater* when the circumstances of the case suggest that a party had reason to be aware of facts sufficient to raise the defense in question. *See O'Brien v. R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1400–1401 (7th Cir.1993); *Chatman–Bey v. Thornburgh*, 864 F.2d 804, 813 n. 9 (D.C.Cir.1988); *cf. Jackson v. Hayakawa*, 682 F.2d 1344, 1348–49 (9th Cir.1982). I read *Glater* as prohibiting a plaintiff from profiting via Rule 12(g) when the plaintiff withholds facts that would have alerted the defendant that a Rule 12(h)(1) defense was available. These plaintiffs may have flirted with such a transgression when they drafted their complaint, but ultimately they supplied enough facts in their complaint to make the venue defense available to the government. The government is therefore not entitled to dismissal of the complaint pursuant to Rule 12(b)(3).

### III.  The Government's Obligation to Replace or Make Payment on Lost Savings Bonds

Through its 12(b)(6) motion, the government advances the proposition that the plain-

---

**6.** The plaintiff's cause of action had its roots in her alleged exposure, while *in utero*, to a drug manufactured by the defendant. *Id.* at 736. The evidence suggested not merely that the plaintiff resided in Massachusetts, but had been exposed to the drug there and later treated for cancer there. *Id.* Thus, the trial court determined that it lacked personal jurisdiction over the defendant in light of the defendant's contacts with New Hampshire, the cause of action's connection with

those contacts and the forum's interests in protecting the rights of a former resident. *Id.*

**7.** The court's opinion actually left the case unresolved, pending the disposition of a Supreme Court case dealing with personal jurisdiction; the First Circuit later affirmed the trial court without modifying its views as to the matters previously discussed. *See Glater v. Eli Lilly & Co.*, 744 F.2d 213, 214 (1st Cir.1984).

tiffs have failed to state a claim upon which relief can be granted because the government has no contractual obligation to replace or make payment upon lost or stolen savings bonds. This is a startling proposition to anyone familiar with federal savings bonds, whose ubiquitousness throughout the Twentieth Century has been premised not merely on patriotism but also upon the bonds' safety, which in turn is a function of "the care which the Government takes to prevent their being redeemed by other than their registered owners, and the relief the Government has undertaken to provide should an unauthorized redemption be effected despite governmental precautions to the contrary." *Wolak v. United States,* 366 F.Supp. 1106, 1114 (D.Conn.1973). Indeed, the relative dearth of reported caselaw concerning the extent to which the government is obligated to replace a lost or stolen savings bond is suggestive of how immutable the replaceability of these instruments has become, in fact if not in law. *Wolak* marked a flat rejection of a very similar argument by the government; despite significant changes to both the applicable statute and the regulations governing savings bonds, I share the view of the *Wolak* court that "[t]he Government's position is supported by neither precedent nor common sense." *Id.*

■■■ It is well settled that state law does not govern the terms of the contract by which the United States borrows money from citizens through the savings bond program; as the Maine Supreme Judicial Court noted a half-century ago, federal contract law controls such a case. *Harvey v. Rackliffe,* 141 Me. 169, 181–82, 41 A.2d 455 (1945); *see also Estate of Curry v. United States,* 409 F.2d 671, 673 (6th Cir.1969); *Woodbury v. United States,* 313 F.2d 291, 295 (9th Cir.1963). "Broadly speaking and with certain qualifications, government bonds are viewed as contracts between the government and the owners, whose terms are fixed by statutes, regulations and offering circulars." *Zelman,* 16 F.3d at 446 (citing *Curry,* 409 F.2d at 675; *Wolak,* 366 F.Supp. at 1111–12). The Tucker Act, specifically 28 U.S.C. § 1346(a)(2), operates both as a grant of jurisdiction and a waiver of sovereign immunity in a civil action based upon an express or implied contract

with the United States. *Angle v. United States,* 709 F.2d 570, 573 (9th Cir.1983).

The government's motion requires the court to ascertain and, if necessary, interpret the terms of the contract between the plaintiffs, as purchasers of savings bonds, and the government, as the vendor of those bonds. Since those terms will be found, at least in part, through the examination of the statutes authorizing the issuance of savings bonds, it is important to bear in mind that this is not a case in which the court is asked to determine whether a federal agency is deviating from its statutory mandate, in which instance the court might owe a considerable measure of deference to the agency's interpretation of the statutory language in question. Nor is this a case in which the plaintiff pursues a statutorily authorized appeal of an agency's administrative determination and the court must search the agency record for evidence to support the agency's findings. Rather, the question is much simpler: From the applicable statutes, regulations and circulars, what contractual terms can the court glean concerning a duty to replace the savings bonds at issue in this proceeding?

From the time the plaintiffs purchased these bonds until 1971, the Secretary of the Treasury was explicitly directed by statute to replace or make payment on a savings bond "[w]henever it is clearly proved to the satisfaction of the Secretary of the Treasury" that the bond had been lost or stolen. Former 31 U.S.C. § 738a, quoted in *Wolak,* 366 F.Supp. at 1112 n. 5. In 1971, Congress amended section 738a to provide that, "[u]nder such regulations as he may deem necessary for the administration of this section, the Secretary of the Treasury is authorized to grant relief on account of the loss, theft, destruction, mutilation, or defacement of any security identified by number and description." P.L. 92–19, 85 Stat. 74 (1971). And, in 1982, as part of an effort to recodify all of title 31, Congress amended the relevant language yet again to provide simply that "[t]he Secretary of the Treasury may provide relief for the loss, theft, destruction, mutilation, or defacement of an obligation identified by number and description." 31 U.S.C. § 3125(b); *see also* Office of Law Revision Counsel, Revi-

sion of Title 31, U.S.C.A., 97th Cong., 2nd Sess. (1982), reprinted in 1982 U.S.C.C.A.N. 4301, 4302 (noting that the 1982 recodification "made no substantive change in the law").

The government urges the court to apply the 1990 version of the statute, citing the dictum in *Wolak* that "the law applicable to plaintiff's claim is that in effect at the time demand for relief was made on the Government." *See Wolak*, 366 F.Supp. at 1113. Viewed in proper context, the quoted language from *Wolak* points the court in precisely the opposite direction. At issue in *Wolak* was a request for replacement made in 1967. *Id.* at 1109. Trial was subsequent to the 1971 amendment of section 738a; the point the court was making is that, to the extent that the 1971 amendment might tend to diminish the relief available to the plaintiff it should not be given that effect unless this was "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." *Id.* at 1113 (quoting *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621–22, 11 L.Ed.2d 576 (1964)). As the *Wolak* court was at pains to point out, the legislative history of the 1971 amendment refutes any notion that this enactment was intended to have any effect on the government's obligation to replace lost or stolen savings bonds, which are registered (as opposed to bearer) instruments. *Wolak*, 366 F.Supp. at 1113; *see also* S.Rep. No. 37, 92nd Cong., 1st Sess., *reprinted in* 1971 U.S.C.C.A.N. 1065 (purpose of revising section 738a was to remove certain limitations on relief to owners of lost or stolen bearer securities of the U.S.; any other changes "relate to form and procedural detail rather than substance"). And, as noted above, the 1982 recodification likewise effected no substantive change to the law governing savings bonds. To the extent that the government incurred certain statutory obligations respecting lost or stolen savings bonds by selling those bonds prior to 1971, the two subsequent amendments to the statute have not changed that obligation.

One who purchases a savings bond in 1995 would be well-advised to ponder carefully whether the government continues to take upon itself the obligation to replace lost or stolen instruments. The plain language of 31 U.S.C. § 3125 appears simply to authorize such relief at the discretion of the Treasury Secretary; similarly, the applicable regulation advises simply that such relief "is authorized." *See* 31 C.F.R. § 315.25. Although the legislative history discussed earlier strongly suggests that Congress never intended to alter the Treasury Department's obligation to provide relief, a court might conclude that in the context of a contract claim based on section 3125 the history is merely extrinsic evidence that is unwelcome in the face of the clear language in section 3125. Fortunately for the plaintiffs, that is not the issue presently before the court. Rather, I must determine whether the 1971 and 1982 enactments retrospectively affect the contracts made by the government when it sold Mrs. Zelman savings bonds in 1968 and 1969. Absent any indication that such was the manifest intent of the legislature, I conclude that any additional discretion vested in the Treasury Secretary by the 1971 and 1982 enactments is not applicable to this case, and that the court should look to the pre–1971 version of section 738a for the relevant contract terms.

In discussing the pre–1971 version of the statute, the plaintiffs rely on language therein specifying that the Secretary "shall" replace or make payment on a savings bond "[w]henever it is clearly proved to the satisfaction of the Secretary" that the instruments were lost or stolen. *See Wolak*, 366 F.Supp. at 1112 n. 5. They characterize this as vesting in the government only the narrow discretion to determine whether there is satisfactory evidence of a loss and otherwise establishing a contractual obligation to provide relief. The government's position is that the reference to the "satisfaction of the Secretary" essentially renders unreviewable a determination by the Secretary not to grant the relief described in section 738a, and that the mandatory language in the statute simply limits the scope of the relief the Secretary may grant in the event he makes the requisite determination. Construing this statutory language, *Wolak* concludes that the government is "directed to replace or make payment for savings bonds which were

proved to have been lost or stolen," *Wolak*, 366 F.Supp. at 1112, a conclusion the government criticizes here as apparently "pulled from thin air," Memorandum of Points and Authorities in Support of Motion to Dismiss of United States of America (Docket No. 16) at 11.

 To the contrary, I believe *Wolak* rests on solid ground. I find in the pre–1971 version of section 738a not a conveyance of unfettered discretion but a Congressional directive that the Secretary of the Treasury must take affirmative steps to assure that savings bonds are redeemed or replaced only at the request of their duly registered owners, and then only when the instruments in question truly have been lost or stolen.[8] For example, in *Bodek v. Department of Treasury, Bureau of Pub. Debt*, 532 F.2d 277 (2d Cir.), *cert. denied*, 429 U.S. 849, 97 S.Ct. 137, 50 L.Ed.2d 122 (1976), nine bonds had been issued to the plaintiff individually and three more to him and his mother jointly, all when the plaintiff was 13 years of age. The plaintiff's parents retained physical custody of the instruments, and refused to turn them over to him after he turned 18. Section 738a provided no authority for the Treasury Department to reissue the bonds because the instruments were not lost or stolen; the court held that the plaintiff's dispute was with his parents, pursuant to state law, rather than with the federal government pursuant to section 738a. *Id.* at 280. As to bonds that truly are lost or stolen, the pre–1971 version of Section 738a plainly requires the Secretary of the Treasury either to replace them or to make payment to the owner.

"[T]he granting of discretion to the [Treasury] Department was not intended to relieve the government of its pre-existing duty to provide such relief." *Boyd v. United States*, 482 F.Supp. 1126, 1131 (W.D.Pa.1980) (citing *Wolak*, 366 F.Supp. at 1113). The government's contract with the plaintiffs includes a duty to replace or make payment on bonds that are lost or stolen, and the plaintiffs' contention that the government has failed to honor this obligation states a claim upon which relief can be granted.

## IV. Conclusion

For the foregoing reasons, the government's motion to dismiss the complaint is **DENIED.**

---

**8.** In arguing to the contrary, the government makes much of the following dicta from the First Circuit's opinion in the plaintiffs' previous lawsuit:

> The Zelmans' argument for equitable relief rests on the ground that the government had an obligation, under the law as it existed when the bonds were purchased, to *replace* stolen bonds that have been improperly redeemed. This argument is difficult to appraise because the text of the provisions relied upon by the Zelmans is not quoted by the Zelmans, and the statutes and regulations to which the Zelmans cite do not clearly set forth the obligation that the Zelmans impute. Whether such an obligation might be made out, however, is an issue we need not determine.

*Zelman*, 16 F.3d at 448 (emphasis in original; footnote omitted). A footnote, setting forth the relevant language from the pre–1971 version of section 738a, is included in this passage, *see id.* at n. 4, suggesting that the court had specifically examined the language of this section in searching for authority to grant the Zelmans the relief they sought.

The obligation that the plaintiffs sought to make out in their previous lawsuit differs from the asserted duty that forms the basis for the instant proceeding. The plaintiffs no longer contend they are entitled to equitable relief because the government violated an obligation to replace lost savings bonds. They now seek money damages based on an asserted violation of the government's obligation to make payment on a lost savings bond that has become redeemable.