**UNITED STATES of America, Appellant,**

**v.**

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellee.**

**Nos. 12011, 12321.**

United States Court of Appeals
Sixth Circuit.

April 13, 1955.

James H. Prentice, Asst. Atty. Gen. (Warren E. Burger, Melvin Richter, Asst. Attys. Gen., J. Leonard Walker, U. S. Dist. Atty., Louisville, Ky., on the brief), for appellant.

H. T. Lively, Louisville, Ky., for appellee.

Before SIMONS, Chief Judge, and ALLEN and STEWART, Circuit Judges.

ALLEN, Circuit Judge.

These appeals consolidated for hearing in this court present similar factual situations and identical questions of law. Judgment was entered in each case in favor of plaintiff[1] railroad company.

Each case was filed under the Tucker Act, 28 U.S.C. Section 1346, for separate amounts less than $10,000 each claimed to be due plaintiff from defendant for numerous shipments made at diverse times, under diverse schedules, between diverse points, and under diverse rates. The amounts claimed for these shipments had been deducted or withheld by defendant or allowed under protest because of a controversy over shipments made in 1943 to 1945 by plaintiff and connecting carriers of certain specially manufactured electrical appliances from West Allis, Wisconsin, to Elza (now Oak Ridge), Tennessee, for wartime use in the government Oak Ridge plant. The facts concerning this controversy are in the main not disputed.

For security reasons the details as to the manufacture of these specially designed appliances were kept secret. The appliances involved were reactors or electromagnetic coils. All reactors involved here had a metal core around which silver wire or bars were wound. There were four types of appliances: type one weighed 33,750 pounds, of which 58.87% was silver; type 2 weighed 56,300 pounds, of which 70.74% was silver; type 3 weighed 56,100 pounds, of which 61.-37% was silver; type 4 weighed 73,440 pounds, of which 35.25% was silver.

Rule 3 of the Consolidated Freight Classification 16 to which the carriers involved were parties in the period involved provided that common carriers should not accept for shipment "precious metals or articles manufactured therefrom." A railroad company when acting outside the performance of its legal duties may contract as a private carrier. McCree v. Davis, 6 Cir., 280 F. 959. In arranging to ship these appliances which were covered by no existing rate or classification, the railroads concluded that these shipments were not "embraced" within their "duty as a common carrier." Santa Fe, P. & P. Railway Co. v. Grant Bros. Construction Co., 228 U.S. 177, 33 S.Ct. 474, 477, 57 L.Ed. 787. The Association of American Railroads accordingly issued A.A.R. Section 22 Quotation No. 100 applicable only to the government, which provided for the transportation of these electrical appliances at $1.18 per cwt. not subject to land-grant deductions. A copy of A.A.R. Section 22 Quotation No. 100 was mailed to the War Department, which acknowledged its receipt, and bills for the transportation of the electrical appliances were computed under the $1.18 per cwt. rate. At first such bills were paid upon presentation but subsequently the General Accounting Office determined that plaintiff had been overpaid and that the proper rate was $1.01 less land-grant deductions, as set forth in Item 6120 of exceptions to Southern Classification. The Government deducted the amount of claimed over-payments and withheld similar amounts from bills later submitted by plaintiff for transportation services. Cases 2045 and 2541 were instituted in the District Court for the Western District of Kentucky to recover the deductions and amounts withheld or allowed under protest. In case 2045 the District

---

1. The parties will be denominated as in the court below.

Court entered judgment for plaintiff aggregating $183,070.99; in case 2541 judgment for plaintiff of $29,254.72 was entered upon authority of the judgment in No. 2045. The action in No. 2045 presented 74 different claims arising out of separate shipments covered by separate bills of lading. The action in No. 2541 included five separate claims also arising out of separate shipments and covered by separate bills of lading. Each claim in each case was for less than $10,000. Judgment in each case was demanded upon each claim.

Defendant contends that under the Tucker Act the District Court had no jurisdiction to entertain the complaints; that the question whether the electrical appliances involved were precious metals or articles manufactured therefrom should have been submitted to the Interstate Commerce Commission before the District Court considered the case; and that, if the District Court had jurisdiction, the carriers incorrectly classified the electrical appliances as precious metals or articles manufactured therefrom and had no authority to issue Section 22 Quotation No. 100 establishing the $1.18 rate per cwt.

As to the jurisdictional question defendant's contention is premised on the theory that the action pleaded in each case is one action. Since the aggregate amount prayed for is more than the $10,000 limit established in the Tucker Act, 28 U.S.C. § 1346(a)(2), it urges that the District Court could not entertain the controversy.

The District Court held to the contrary. In case 2045 it filed a detailed opinion on its ruling denying defendant's motion to dismiss for lack of jurisdiction. 106 F. Supp. 999. It pointed out that the amended complaint seeks recovery on 74 separate and distinct claims for freight alleged to be due on separate and independent shipments, each separate claim being for an amount less than $10,000, and hence within the jurisdictional limitation of the Tucker Act. We think this conclusion is correct. Each shipment as set up in the complaint was embodied in a separate count. This fact alone is not conclusive; the label which a plaintiff applies to his pleading does not determine the nature of the cause of action. Aktiebolaget Bofors v. United States, 90 U.S. App.D.C. 92, 194 F.2d 145, 148. The decisive fact is that each claim is founded upon a different contract. The various shipments involved items of different weights, moving between different points, having different routes and under different applicable rates. The evidence, therefore, does not, as contended by defendant, apply equally to all of the separate claims. In fact, if only the facts common to each individual claim were pleaded, no case would be stated. The underlying facts as to the establishment of the $1.18 per cwt. rate are the same as to all claims. Defendant in effect contends that the rate is the contract and urges that Section 22 Quotation No. 100 was intended to be a single contractual agreement. But the rate is simply a measure of compensation applicable if shipment is made. The right to compensation on the part of the railroad arises not with establishment of the rate but with the shipment. In each case the individual shipment must be proved to support recovery. Defendant's contention that these numerous claims arise out of the issuance of a rate which constitutes a single contract is squarely at variance with the evidence.

Each shipment was made under a bill of lading which as declared by the Supreme Court of the United States constitutes the contract. Michigan Central Railroad Co. v. Mark Owen & Co., 256 U.S. 427, 41 S.Ct. 554, 65 L.Ed. 1032; Louisville & Nashville Railroad Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900. The bill of lading contains "the entire contract" upon which the responsibilities of the parties rest. St. Louis Iron Mountain & Southern Railway Co. v. Starbird, 243 U.S. 592, 597, 37 S.Ct. 462, 61 L.Ed. 917. The valid terms of the bill of lading, which is an express contract within the purview of the Tucker Act, fix the liability of the carrier, the connecting carrier, the con-

signee, and the shipper. Missouri, Kansas & Texas Railway Co. of Texas v. Ward, 244 U.S. 383, 387, 37 S.Ct. 617, 61 L.Ed. 1213. Cf. Chesapeake & O. Railway Co. v. Martin, 283 U.S. 209, 222, 51 S.Ct. 453, 75 L.Ed. 983. In case 2045 the 74 bills of lading constituted the 74 contracts between the carriers and the shipper. Since these 74 claims arise out of diverse and separate acts and agreements and totally different evidence is necessary to support them, plaintiff has not split a single cause of action as contended by defendant, but has joined several causes. The same considerations apply to case 2541.

■■■■ Where two or more distinct primary rights are sought to be enforced or two or more distinct wrongs redressed, there is a proper joinder of causes of action although such causes may relate to the same transaction or result from one act, and although the remedial rights and remedies are of the same kind. 1 C.J.S., Actions, § 65, p. 1192. A complaint states different causes of action where it sets out and seeks to recover upon separate and distinct contracts. Rounds v. Strang, 192 Mo.App. 568, 180 S.W. 1069; Cohen v. Clark, 44 Mont. 151, 119 P. 775; Hevia v. Wheelock, 162 App.Div. 759, 148 N.Y.S. 165; 1 C.J.S., Actions, § 65, p. 1192, Note 92. As pointed out by the District Court, the joinder of these 74 causes of action is authorized under Rule 18(a) of the Federal Rules of Civil Procedure, 28 U.S.C. is not forbidden by the Tucker Act, and is applied here to claims, none of which involve $10,000.

We think the revision of the Tucker Act in 1948 sheds little light upon this controversy. The statute before the amendment of 1948 gave the District Court original jurisdiction "Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States * * or upon any contract, express or implied * * * in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty * * *." 28 U.S.C. § 41(20). The revision of 1948, 28 U.S.C. § 1346(a), gave the District Court original jurisdiction concurrent with the Court of Claims of "(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution * * * or upon any express or implied contract with the United States * * *."

The Government contends that under this revision the question of the existence of jurisdiction under the Tucker Act is to be determined by examining the amount prayed for in the complaint in the civil action. But here there were numerous actions which prayed for different judgments, each one less than $10,000. The breach of contract case of Aktiebolaget Bofors v. United States, supra, does not apply, for there only one cause of action was stated. No judicial decisions squarely in point are cited.

■■■■ Plaintiff could have brought a separate action on each claim in the District Court, but it seemed wise to join the various actions for the purpose of saving time for the court, the defendant, and the plaintiff. The Tucker Act does not forbid such joinder and we think such a provision should not be implied to deprive the Federal Courts of the right of availing themselves of this advantageous process. Joinder was recognized at common law with reference to actions on contract presenting identical legal questions such as are presented in the instant case. "Courts of general jurisdiction are generally deemed to have inherent power, independent of any statutory authorization, to order consolidation of pending actions between the same parties, upon the same questions in controversy. * * *" 1 American Jur. 476; Bowen v. Chase, 94 U.S. 812, 824, 24 L.Ed. 184. The right to consolidate actions is recognized in the Federal Rules of Civil Procedure 18(a). But the courts established the practice as an exercise of their inherent power. As pointed out by Mr. Justice Brandeis in Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 44 S.Ct. 220, 222, 68 L.Ed. 480, "Most

rules are merely a formulation of the previous practice of the courts." It is significant that the revision of the Tucker Act did not purport to eliminate this inherent power so long established. Moreover, permitting the joinder in instances where each claim upon which plaintiff could have sued separately falls within the $10,000 limitation, in no way affects, extends, or limits the jurisdiction of the District Court. Federal Rules of Civil Procedure, Rule 18(a).

■ As to the contention that the District Court was without jurisdiction in these cases until the Interstate Commerce Commission had passed upon them, the District Court correctly held that upon the authority of Great Northern Railway Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943, opinion by Mr. Justice Brandeis, the task to be performed by the court here was merely to determine the meaning of words in a tariff used in their ordinary sense and to apply that meaning to undisputed facts. Other cases supporting this conclusion are W. P. Brown & Sons Lumber Co. v. Louisville & N. R. Co., 6 Cir., 82 F.2d 94, 95, affirmed 299 U.S. 393, 57 S.Ct. 265, 81 L.Ed. 301; American Railway Express Co., Inc., v. Price Bros., Inc., 5 Cir., 54 F.2d 67; Pennsylvania Railroad Co. v. Fox & London, Inc., 2 Cir., 93 F.2d 669. It follows that plaintiff was not required to apply to the Interstate Commerce Commission before filing suit in the District Court, for no question of administrative discretion or expertise was presented.

■ All other questions involved have been fully discussed in the memorandum of the District Court upon the motion to dismiss action 2045 and in its elaborate findings of fact and conclusions of law made in that case after hearing on the merits. The District Court held that there was no applicable tariff rate covering the appliances involved; that the shipments did not fall within Item 6120 I.F.A. Tariff No. 90 as contended by the government; that since the railroads under Rule 3 of the Consolidated Freight Classification were prohibited from trans-

porting precious metals or articles manufactured therefrom they were not required to accept such appliances as common carriers; that a common carrier acting outside the performance of its required duties to transport goods which it is not required to carry may contract as a private carrier; that the extra services given by the railroads in the shipment, including alteration in the construction of the freight cars used to carry these appliances, justified a special rate; that the rate of $1.18 per cwt. (Section 22 Quotation 100) was a lawful rate not subject to land-grant deduction and was binding upon defendant as to the shipments here involved. Louisville & N. R. Co. v. United States, D.C., 106 F.Supp. 999. The findings of fact are clearly correct, the conclusions of law are supported by the highest authority, and they are adopted by this court.

The judgment of the District Court in each case is affirmed.