**Deborah GLASKIN, as Executrix of the Estate of Bernard Glaskin, Plaintiff,**

v.

**Arthur A. KLASS, Assistant Commissioner for the Bureau of Public Debt, Department of the Treasury, Defendant.**

**No. CIV. A. 96–12188–DPW.**

United States District Court, D. Massachusetts.

Feb. 23, 1998.

Gregory J. Aceto, Hanify & King, Boston, MA, for Plaintiff.

John A. Capin, Julie S. Schrager, Assistant U.S. Attorneys, United States Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This case involves an intra-family dispute over ownership of United States savings bonds with a current redemption value of nearly one million dollars. Specifically, the suit arises from the decision of the Bureau of the Public Debt (the "Bureau") to reissue the bonds after the death of the paterfamilias purchaser. This post-mortem reissuance to the purchaser's sons-by-his-first wife effectively negated earlier reissuances during the purchaser's lifetime to his son-by-his-second wife.

The decedent purchaser's second wife, who is executrix of his estate, seeks to litigate the dispute in this District, arguing that each of the contested savings bonds is separately valued at less than $10,000, the jurisdictional limit for contract claims that can be addressed by this Court rather than the Court of Federal Claims in Washington, D.C. In addition, the plaintiff has offered alternative jurisdictional theories—mandamus and administrative procedure review—to keep the dispute in this District. Before me is the Bureau's motion for dismissal or summary judgment with respect to all counts. I find the case is properly characterized as a federal contract dispute. I decline the plaintiff's invitation to disaggregate the claims by narrowing the focus to each of the several savings bonds. Rather I find that the law suit turns on the propriety of the five reissuance certificates, each involving savings bonds aggregating in excess of the jurisdictional limit for government contract claims in this court. Accordingly, after dismissing all but the contract claims, I will transfer this case to the Court of Federal Claims.

## I. BACKGROUND

The relevant facts are undisputed. Throughout his lifetime, Bernard Glaskin purchased United States savings bonds, each of which was registered as co-owned by Bernard and one of his three sons. Two of the sons, Stanley Glaskin and Robert Glaskin, were from Bernard's first marriage. The third son, Todd Glaskin, was from Bernard's second marriage, to plaintiff Deborah Glaskin. Deborah was married to Bernard at the time of his death, and she is executrix of his estate.

Prior to Bernard's death, reissuance applications for some of the bonds were submitted to the Bureau. The applications requested that some of the bonds registered to Bernard and Stanley, and some registered to Bernard

and Robert, be reissued to Bernard and Todd. The applications bore notarized signatures purporting to be those of Bernard and Stanley, and of Bernard and Robert, respectively. Each of the reissuance applications involved bonds the aggregate value of which was in excess of $10,000.

Following Bernard's death, Stanley and Robert filed a claim with the Bureau in which they stated that they had not signed the reissuance applications. The Secret Service conducted an investigation into the validity of the signatures on the applications.[1] The Bureau determined that Stanley and Robert had not signed the applications, and the Bureau decided to reissue the bonds back to them.

Defendant Arthur Klass, Assistant Commissioner of the Bureau, sent letters to Todd and to Gregory Aceto, the attorney for Bernard's estate, informing them of the Bureau's decision. Todd had disclaimed his interest in the bonds, and they became part of Bernard's estate, of which his mother, Deborah, was the sole beneficiary. Aceto sent a letter to the Bureau (1) protesting its decision, (2) demanding that the bonds not be reissued and that the matter be reinvestigated and reconsidered, and (3) stating an intention "to appeal and pursue this matter in the Federal Court system." In a facsimile response on the same day, the Bureau stated that it was not statutorily obligated to reconsider its decision, but that "[n]onetheless, the Bureau will review your client's request for reconsideration, if one is made."

Rather than seeking reconsideration, Deborah petitioned this Court for a writ of mandamus compelling Klass to reinvestigate and reconsider the matter prior to reissuing the bonds. Klass filed a motion to dismiss or for summary judgment, and Deborah moved to amend her petition. Following a hearing at which I informed the parties that the extraordinary writ of mandamus did not appear appropriate in light of the availability of an adequate contract remedy, I instructed plaintiff to submit an amended complaint.

Thereafter, Deborah filed a Second Amended Complaint (1) seeking judicial review of the Bureau's reissuance decision under the Administrative Procedure Act ("APA") and (2) alleging breach of contract. Klass then filed a new motion to dismiss or for summary judgment, arguing (1) that the APA does not provide an avenue for review in this case, and (2) that jurisdiction over the contract claim is lacking because the claim involves more than $10,000. Quite apart from the choice of jurisdictional avenue, it appears clear that plaintiff's threshold concern is to style this case in a manner that will keep the dispute in the United States District Court for the District of Massachusetts, which she apparently views as a more convenient forum than the Court of Federal Claims in Washington, D.C.

## II. THE APA CLAIM

Count I of the Second Amended Complaint seeks judicial review of the Bureau's actions pursuant to 5 U.S.C. § 702. The statute provides in part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

Specifically, Deborah seeks an injunction directing Klass to rescind the Bureau's decision to reissue the bonds back to Stanley and Robert.

Klass does not argue that the claim is one "seeking relief [in the form of] money damages," a circumstance under which the APA would not apply. *Id.* The Supreme Court's holding in *Bowen v. Massachusetts*, 487 U.S.

---

1. The parties dispute the precise nature of the investigation, and the complaint's references to the investigation are in quotation marks, apparently to suggest that this was an investigation in name only. However, any dispute over the nature and quality of the investigation is not relevant to the issues now before me.

879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), appears to preclude such an argument. The plaintiff in *Bowen* sought judicial review of "a final order of the Secretary of Health and Human Services refusing to reimburse a State for a category of expenditures under its Medicaid program." *Id.*, 487 U.S. at 881. The majority held:

> There are two reasons why the plain language [with respect to money damages] does not foreclose judicial review .... First, insofar as the complaints sought declaratory and injunctive relief, they were certainly not actions for money damages. Second, and more importantly, even the monetary aspects of the relief that the State sought are not "money damages" as that term is used in the law.

*Id.* at 893. The Court reasoned that monetary awards constitute "money damages" only when they are "given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." *Id.* at 895.

Here, the requested relief would restore the bonds to Bernard's estate rather than provide compensation for the loss of the bonds. Under the analysis of *Bowen*, therefore, the type of remedy being sought does not preclude judicial review pursuant to § 702. *See Crocker v. United States*, 125 F.3d 1475, 1477 (Fed.Cir.1997) (characterizing action for review of forfeiture of United States savings bonds as one "seek[ing] specific relief, namely the recovery of identified property and monies, an action that is equitable in nature and sharply distinguishable from an action at law for damages"); *cf.*

*Bowen*, 487 U.S. at 919 n. 3 (Scalia, J., dissenting) (arguing that "[s]uit for a sum of money is to be distinguished from suit for specific currency or coins in which the plaintiff claims a present possessory interest").

Klass instead argues that the Bureau's action is not of the type which is reviewable more generally under the APA. The Act provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. In particular, Klass contends that a breach of contract action is an "adequate remedy in a court."[2] The United States Court of Federal Claims has jurisdiction over "any claim against the United States founded ... upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and federal district courts have concurrent jurisdiction over such a claim if it does "not exceed[] $10,000 in amount," *id.* § 1346(a)(2).

As an initial matter, I note that "[t]he only remedy to which the United States has consented in cases of breach of contract is to the payment of money damages .... Federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir.1989); *see Bowen*, 487 U.S. at 921 (Scalia, J., dissenting) ("It is settled that sovereign immunity bars a suit against the United States for specific performance of a contract ...."). In this case, however, Deborah could be awarded money damages compensating her for the loss of the bonds.[3]

**2.** In a footnote, Klass also argues that there has been no "final agency action" because "the Bureau has agreed to reconsider its decision." (Klass Br. at 5 n. 3.) Section 704 provides: "Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application ... for any form of reconsideration." "That language has long been construed by th[e Supreme Court] and other courts merely to relieve parties from the requirement of petitioning for rehearing before seeking judicial review ..., but not to prevent petitions for reconsideration that are actually filed from rendering the orders under consideration nonfinal." *Interstate Commerce Comm'n v. Brotherhood of Locomotive Eng'rs*,

482 U.S. 270, 284–85, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987).

Thus, the amenability of the Bureau to reconsideration is irrelevant unless a request for reconsideration has been made. In the Bureau's view, at least, no such petition for reconsideration has been filed. The Bureau's letter of October 17, 1996 states: "Public Debt will review your client's request for reconsideration, *if one is made.*" (Klass Ex. 5, Letter (emphasis added).) It does not appear one has been made. Therefore, the Bureau's decision constitutes "final agency action."

**3.** It is true that Deborah has not requested this relief, but a remedy can be adequate under § 704

I acknowledge that if this award were to equal the redemption value of the bonds,[4] it might *also* be considered specific relief—i.e., specific performance of the government's payment obligations. In his dissent in *Bowen*, Justice Scalia (joined by Chief Justice Rehnquist and Justice Kennedy) suggested that the Claims Court would be unable to make such awards because "on the Court's theory, such a suit is not a suit for money damages but rather for specific relief." 487 U.S. at 920–21 (Scalia, J., dissenting). However, the majority opinion appeared to leave open the possibility that an award could constitute both compensatory and specific relief: "[W]hile in many instances an award of money is an award of damages, occasionally a money award is *also* a specie remedy." 487 U.S. at 895 (citations omitted) (emphasis added). The authorities cited by the Court indicate that monetary compensation may also be considered specific performance where, as here, the relevant contract was for the payment of money and thus "the plaintiff was never entitled to anything but money." 1 Dan B. Dobbs, *Law of Remedies* § 3.1, at 280 (2d ed.1993). As a result, I find that compensatory money damages can be awarded against the government for breach of contract even if those damages happen to equal the amount of money owed under the contract—i.e., even if the award could also be viewed as a specific remedy.

The question thus becomes whether such an award is an "adequate remedy in a court" under § 704. In *Bowen*, the Supreme Court observed that "although the primary thrust of § 704 was to codify the exhaustion requirement, the provision as enacted also makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." 487 U.S. at 903. However, "[t]he exception that was intended to avoid such duplication should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Id.*

The Court held that the remedy available in the Claims Court for a Medicaid disallowance decision "is plainly not the kind of 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA." *Id.* at 904; *see also Massachusetts v. Department of Health & Human Servs.*, 815 F.2d 778, 784 (1st Cir.1987) (stating that the court "would be very reluctant" to rely on § 704 in holding that judicial review under the APA is unavailable for disallowance decision). The Court explained:

> [L]itigation in the Claims Court can offer precisely the kind of 'special and adequate review procedures' that are needed to remedy particular categories of past injuries or labors for which federal statutes provide compensation. Managing the relationships between States and the Federal Government that occur over time and that involve constantly shifting balance sheets requires a different sort of review and relief process. The APA is tailored to fit the latter situation; the Tucker Act, the former.

487 U.S. at 905 n. 39. Specifically, in disallowance cases the Claims Court (1) could not grant the type of prospective relief—e.g., requiring the Secretary to modify future practices—that might be necessary; (2) could not review a disallowance decision until the Federal Government recouped the disallowed payments; and (3) would be required to evaluate state governmental activities and to construe state law. *Id.* at 905–08.

By contrast, none of these problems apply to the resolution (by either the Court of Federal Claims or by this Court) of a claim for breach of contract, a "categor[y] of past injuries" to which the Tucker Act is specifically tailored. As a result, a breach of contract claim under the Tucker Act is an "adequate remedy in a court," precluding APA review. *See American Science & Eng'g, Inc.*

even if it is not the one most preferred by the plaintiff. *See American Science & Eng'g, Inc. v. Califano*, 571 F.2d 58, 62 (1st Cir.1978) ("That the Court of Claims cannot provide the precise relief requested is no grounds for denying its jurisdiction over the claim.")

**4.** I note that compensatory damages might not be limited to the redemption value of the bonds, because the alleged breach was not a failure to redeem. In other words, there is no indication that the estate would have redeemed the bonds, and they may be worth more in unredeemed form.

*v. Califano,* 571 F.2d 58, 62 (1st Cir.1978) ("[R]eview by the Court of Claims has consistently been held to provide an adequate remedy for an alleged breach of contract by a federal agency."); *Watson v. Blumenthal,* 586 F.2d 925, 934 (2d Cir.1978); *Alabama Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221, 1229–30 (5th Cir.1976); *Serra v. General Servs. Admin.,* 667 F.Supp. 1042, 1051 (S.D.N.Y.1987) ("Congress, through the Tucker Act, as amended by the [Contract Disputes Act], has deemed the Court of Claims, despite whatever limitations exist as to the relief it may grant, to be the 'adequate remedy' for plaintiffs suing the United States over a federal contract."), *aff'd,* 847 F.2d 1045 (2d Cir.1988). Under the same principles, the Tucker Act "impliedly forbids" relief under the APA for breach of contract. *See* 5 U.S.C. § 702 ("Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."); *North Star Alaska v. United States,* 14 F.3d 36, 38 (9th Cir.), *cert. denied,* 512 U.S. 1220, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994); *Transohio Savs. Bank v. Office of Thrift Supervision,* 967 F.2d 598, 613 (D.C.Cir. 1992).

While it is therefore clear that the APA does not apply to actions for breach of contract, "[p]roblems arise in trying to draw a line between actions that basically are contractual disputes and those seeking to rectify alleged misbehavior." 17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4101, at 317–18 (2d ed.1988). Especially in light of the Supreme Court's statement in *Bowen* that "[t]he policies of the APA [should] take precedence over the purposes of the Tucker Act," 487 U.S. at 908 n. 46, courts must "be careful not to subvert the congressional objectives underlying the enactment of the judicial review statute by allowing the government to give an overly expansive scope to the notion of claims 'founded upon' a contract," *Watson,* 586 F.2d at 931 (quoting *Federal Practice & Procedure* at 319).

■ "Broadly speaking and with certain qualifications, government bonds are viewed as contracts between the government and owners." *Zelman v. Gregg,* 16 F.3d 445, 446 (1st Cir.1994); *see Watson,* 586 F.2d at 930 ("[T]he bonds are themselves contracts ...."). Thus, while heeding the cautionary advice of *Bowen,* I nevertheless find that a suit over the Bureau's decision to reissue United States savings bonds may properly be characterized as "founded upon" a contract without expanding the notion of such claims in the least. *See Watson,* 586 F.2d at 930 ("[A]ccordingly, one may view the claim as essentially being 'founded upon a contract' and hence a matter exclusively for the Court of Claims."); *see also Zelman,* 16 F.3d at 446 (reviewing Tucker Act claim based on failure to reissue savings bonds). In other words, the Bureau's reissuance decision was the type of action to which the Tucker Act—as opposed to the APA—is addressed. Consequently, I will dismiss the APA claim, Count I of the Second Amended Complaint.

## III. THE CONTRACT CLAIM

■ The United States Court of Federal Claims has jurisdiction over "any claim against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Federal district courts have concurrent jurisdiction over such a claim only if it does "not exceed[] $10,000 in amount." *Id.* § 1346(a)(2). The plaintiff argues that none of the bonds at issue has a value in excess of $10,000. Klass argues that this Court lacks jurisdiction because Glaskin's contract claims in aggregate exceed $10,000. It is equally true that the current redemption value of each individual bond is less than $10,000 and that the Bureau's decisions applied to all of the bonds at issue, which are valued at roughly $1,000,000. Neither the value of the individual bonds nor the aggregate value of all the bonds, however, provides the proper focus for assessing the jurisdictional amount. The Bureau rendered separate and discrete decisions which are at the heart of this dispute with respect to the authenticity of the signatures on each of the five reissuance applications. It is the value of the bonds listed on each of those applications which consequently provides the proper jurisdictional amount focus.

In support of her contention that she has a separate claim with respect to each bond, the plaintiff relies solely upon *Zelman v. Gregg,* 16 F.3d 445 (1st Cir.1994) (*Zelman I* ), and *Zelman v. United States,* 893 F.Supp. 78 (D.Me.1995) (*Zelman II* ), where bondholders sued the Bureau over its refusal to reissue six savings bonds, valued in the aggregate at roughly $30,000, which they claimed had been lost or stolen. *Zelman II,* 893 F.Supp. at 79–80 & n. 3. In *Zelman I,* the First Circuit reviewed the District Court's dismissal of the suit on the grounds that more than $10,000 was at stake. 16 F.3d at 446. On appeal, the plaintiffs argued for the first time that they had six separate claims, each based on a different bond. *Id.* The First Circuit held:

> We are reluctant to overturn the district court in a civil suit based on a disaggregation theory not raised in that court.... Accordingly, we are disposed to affirm the district court but without prejudice to the Zelmans' filing of a new suit in the same district court if they wish to pursue their disaggregation theory.

*Id.* at 447. The Zelmans did thereafter file a new suit with separate claims for each bond. *Zelman II,* 893 F.Supp. at 80. The government then moved for dismissal, arguing that the attempted disaggregation of the claims was mere "artful pleading," but Magistrate Judge Cohen denied the motion. That determination is merely noted in passing, without explanation, in a published opinion addressing a different motion. 893 F.Supp. at 81.

A proper evaluation of the disaggregation theory plaintiff presses here requires a more extended analysis. "The congressional policy [behind the $10,000 limit on district court jurisdiction] is that all large claims must be presented in the one court in Washington." *Sutcliffe Storage & Warehouse Co. v. United States,* 162 F.2d 849, 852 (1st Cir.1947). But district court jurisdiction will not be defeated simply because one or more plaintiffs combine multiple distinct claims, each involving $10,000 or less, in a single lawsuit. *See, e.g., Baker v. United States,* 722 F.2d 517, 518 (9th Cir.1983); *United States v. Louisville &*

*Nashville R.R. Co.,* 221 F.2d 698, 701–03 (6th Cir.1955); 14 *Federal Practice & Procedure* § 3657, at 287. However, "[p]laintiff[s] cannot split a single cause of action in order to bring it within this exception to the jurisdictional amount limitation." 14 *Federal Practice & Procedure* at 287–88; *see, e.g., Washington v. Udall,* 417 F.2d 1310, 1320–21 (9th Cir.1969); *Sutcliffe Storage,* 162 F.2d at 851–52.

Each bond involved in this action is a separate contract, but the dispute centers upon the reissuance applications, each of which encompassed multiple bonds. Each reissuance application was signed, submitted, granted, challenged, investigated, and found invalid. With respect to each application, therefore, "recovery on each [bond] would rise and fall on the same facts and legal arguments." *United States v. Lindberg Corp.,* 686 F.Supp. 701, 705 (E.D.Wis.1987), *aff'd,* 882 F.2d 1158 (7th Cir.1989).[5] Consequently, I find that the bonds included in each application form the basis for a single cognizable claim. *See United States v. Lindberg Corp.,* 882 F.2d 1158, 1164 (7th Cir.1989) (holding that "[t]he appellant's breaking down the total amount [for uncompensated taking of 265 gears] to a less-than-$10,000 amount-per-gear [wa]s untenable" where recovery on each gear depended on same facts and legal arguments); *Udall,* 417 F.2d at 1320–21 (holding that Tucker Act plaintiff "cannot carve out for suit in the District Court 251.8 irrigable acres" where "[t]he same factual and legal issues pertain to the entire 1,594 acres"); *cf. Louisville & Nashville R.R.,* 221 F.2d at 701 (holding that disaggregation of claims based on different shipments was appropriate because "[t]he evidence [did not] apply equally to all of the separate claims"). The doctrine of res judicata would ultimately preclude plaintiffs from separate treatment of the related claims among separate lawsuits, and "[t]he fact that here involved are questions of federal jurisdiction [under the Tucker Act] is not a sufficient basis for departing from the[] usual rules as to the splitting of legal claims." *Sutcliffe Storage,* 162 F.2d at 852 (dismissing second, third, and

5. In this connection, I note that *Zelman* may well be distinguishable in that the loss or theft of each

bond arguably needed to be proven as a separate factual finding.

**74**

fourth Tucker Act suits where claim for use and occupation of real property had been split into four actions involving different periods); *cf. Louisville & Nashville R.R.*, 221 F.2d at 702 (holding that disaggregation was appropriate where "[p]laintiff could have brought a separate action on each claim").

I find that Deborah has five separate claims, each of which is based upon the Bureau's decision with respect to a single reissuance application and all of the bonds included therein. Because each of those applications concerns bonds whose value aggregates in excess of $10,000, the Court of Federal Claims has exclusive jurisdiction over all five claims. Accordingly, I will order pursuant to 28 U.S.C. § 1631 that this case, consisting only of Count II of the Second Amended Complaint, be transferred to the Court of Federal Claims.

### IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED as to Count I. With respect to Count II, the clerk is hereby directed to TRANSFER this case to the Court of Federal Claims.