The **MEAD CORPORATION,**
et al., Plaintiffs,

v.

**ABB POWER GENERATION**
INC., Defendant.

No. 00–351.

United States District Court,
S.D. Ohio,
Eastern Division.

April 18, 2001.

Daniel F. Edwards, Thompson, Hine & Flory, Columbus, OH, for Plaintiffs.

Larry H. James, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

This contract action is brought by The Mead Corporation ("Mead"), Factory Mutual Insurance Company ("Factory Mutual"), and National Union Fire Insurance Company of Pittsburgh ("National Union") against ABB Alstom Power Incorporated ("ABB Alstom"), formerly known as ABB Power Generation Incorporated ("ABB Power"). Plaintiffs originally filed their complaint in state court, but defendant removed the action to this court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction. Plaintiffs allege that defendant breached a 1992 contract when an upgraded turbine failed for a second time in Mead's Chillicothe, Ohio plant. Plaintiffs assert claims for breach of contract and indemnification. This matter is before the court on defendant's motion for summary judgement, which is ripe for ruling.

## I. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993). In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339–40 (6th Cir. 1993). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). See generally Booker v.

*Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–53, 106 S.Ct. 2505). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. *See also Gregory v. Hunt,* 24 F.3d 781, 784 (6th Cir.1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Adams v. Metiva,* 31 F.3d 375, 378 (6th Cir.1994).

## II. *FACTUAL BACKGROUND*

The facts are undisputed. Mead and ABB Process Automation Inc. ("ABB Process") entered into a contract in January, 1992, in which ABB Process was to provide equipment, materials, and designs to upgrade the No. 12 turbine at Mead's Chillicothe, Ohio plant. Before any work was commenced, Mead and ABB Process entered into an agreement, drafted by Mead,

entitled the "General Terms and Conditions for Contracts and Purchase Orders for Purchase of Equipment" in July, 1993. Complaint at ¶ 5.[1]

In December, 1994 ABB Alstom assumed the contractual obligations from ABB Process. Defendant continued the work on the No. 12 turbine and finished in December, 1995 by installing fan blades of a greater pitch. After three months of use, the No. 12 turbine suffered a fan blade failure. The cause of this failure was determined to be improper pin fitting. The parties have settled all differences regarding that failure. On March 6, 1996 the parties entered into a written modification of the original contract to cover the repairs that defendant made after the turbine failure. Under the terms of the written modification, the repair work was to be under warranty for an additional twelve months following the startup of the turbine. The No. 12 turbine was put back into service on March 12, 1996.

A second turbine failure occurred on January 4, 1998. The cause was once again determined to be improper pin fitting. Defendant alleges that the parties attempted to reach a settlement for this failure, but these efforts failed. As a result, Factory Mutual and National Union, Mead's insurance carriers, each paid Mead $550,212 for partial assignment of Mead's rights against defendant for "damages including lost profits, production losses, and business interruptions." Complaint at ¶ 14.

## III. *DISCUSSION*

The parties acknowledge that Ohio law governs this action. "If a contract is clear and unambiguous, then its interpre-

---

**1.** Plaintiffs' First Amended Complaint, which was originally filed in state court, is attached to defendant's Notice of Removal to Federal

Court (Doc. 1) as exhibit "A." Throughout this Order it will be referred to as "Complaint."

tation is a matter of law and there is no issue of fact to be determined." *Island Refuse Transfer Co. v. Browning–Ferris Industries of Ohio,* 15 Ohio St.3d 321, 474 N.E.2d 271, 272 (1984). The court finds that this contract is clear and unambiguous.

## A. Breach of Contract Claim [2]

■ Plaintiffs claim that the January 4, 1998 fan blade failure was a result of defendant's breach of contract. Defendant argues that it is entitled to summary judgement on plaintiffs' breach of contract claim because the claim is actually a disguised breach of warranty claim. For the reasons set forth below, the court agrees.

■ Plaintiffs labeled their first cause of action "breach of contract," and in their memorandum contra defendant's motion for summary judgment state, *"[n]owhere in the Amended Complaint do the Plaintiffs assert a cause of action for breach of warranty."* Memorandum Contra at p. 2. However, courts do "not rely solely on labels in a complaint, but [must] probe deeper and examine the substance of the complaint." *Minger v. Green,* 239 F.3d 793, 799 (6th Cir.2001). Indeed, the "label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." *Id.* (quoting *United States v. Louisville & Nashville R. Co.,* 221 F.2d 698, 701 (6th Cir.1955)). Examining the substance of plaintiffs' complaint in the instant case, it is clear that plaintiffs' breach of contract claim is, in reality, a thinly disguised breach of warranty claim. Why disguised? Because the warranty had expired at the time of the January 4, 1998 fan blade failure.

The first contract entered into by the parties, entitled "Design, Construction, and Installation Agreement," was executed in January, 1992. *See* Motion for Summary Judgment, Exh. A. In August, 1993 the parties entered into a subsequent contract, entitled, "General Terms and Conditions for Contracts and Purchase Orders For Purchase of Equipment." *See id.,* Exh. B. On January 3, 1995 the parties entered into a supplemental agreement, the purpose of which was to alter several portions of the August, 1993 contract. *See id.,* Exh. C. Section 5 of the supplemental agreement replaced the warranty provision of the August, 1993 contract in its entirety. *See* Exh C. at p. 2. A second supplemental agreement was entered into on January 16, 1995. *See* Motion for Summary Judgment, Exh. H. After the March, 1996 fan blade failure, the parties entered into the written modification of their earlier contracts. *See id.,* Exh. D. This modification was entered into "to modify [t]he original commercial terms between ABB Power Generation and the Mead Corporation because of turbine equipment failure resulting in warranty repairs[.]" *Id.*

The March, 1996 written modification states, in pertinent part:

The following changes will be incorporated in and modify the original contract.

1. ABB will install replacement fan blades and make other necessary repairs to bring the turbine generator to the prefailure condition at their cost. ABB will *assure total integrity of installation and warrant the rebuilt turbine generator for a period of one (1) year after completeion [sic] of warranty repairs and start-up.* The warranty will

---

2. In its motion for summary judgment, defendant argued that it was entitled for summary judgment as to plaintiffs' breach of contract claim arising from the 1996 fan blade failure. However, plaintiffs did not assert a breach of contract claim arising from the 1996 fan blade failure.

be per terms set forth in the "Original Terms and Conditions for Contracts and Purchase Orders for Purchase of Equipment" between ABB Process Generation, Incorporated and The Mead Corporation signed and dated July 29, 1993 Section 4.0 Warranty.

*Id.* (emphasis added). Thus, the March, 1996 installation and repairs were under warranty for a period of one year. As stated in the written modification, it was governed by the warranty provision set forth in the August, 1993 contract(Exh. B)[3], which was modified on two occasions, the last of which was January 16, 1995 (Exh. H). The warranty provision states, in pertinent part:

4.1 Equipment supplied by seller is warranted against defects in material and workmanship for twelve (12) months after installation or eighteen (18) months following delivery to TMC [The Mead Company] or into storage, whichever period shall expire first.

4.2 Services will be performed in a workmanlike manner and recommendations for corrective action made in connection with technical investigations or inspections or the like, will be based on seller's best judgement considering the facts then known. Such warranty shall extend for twelve (12) months from the date of completion of services.

4.3 Should any failure to conform with the applicable warranties appear during the specified periods seller shall correct such nonconformity, at its option and at its expense by repair, re-performance or replacement of the non-conforming work.... Repairs, re-performance or replacements pursuant to warranty shall not renew or extend the applicable war-

ranty period, provided however, that any such repairs, re-performance or replacement of work shall be warranted for the time remaining of the original warranty or for one hundred and eighty (180) days, whichever is longer. In no event shall any warranty period, including extension thereto, extend for more than twenty-four (24) months from delivery of renewal parts and/or equipment or completion of services, as applicable[.]

4.6 *Except for seller's performance warranty stated below, the foregoing warranties are exclusive and in lieu of all other warranties of quality and performance and results, written, oral, or implied* and except for seller's performance warranty stated below, all other warranties including any warranty of merchantability or fitness for a particular purpose are hereby disclaimed by seller and all equipment manufacturers.

Motion for Summary Judgment, Exh. H at pp. 2–3 (emphasis added).

A review of plaintiffs' complaint illustrates the parallel between what they complain of and the coverage of the original warranty and the March, 1996 written modification. Plaintiffs claim that the January 4, 1998 fan blade failure was caused by ABB's breach of contract "in one or more of the following particulars:"

(a) It failed to repair the generator properly; (b) It failed to set the pitch of the fan blades properly; (c) It failed to fit the fan blades properly; (d) It defectively repaired the generator; (e) It used defective materials and/or equipment; (f) Its work and materials resulted in material defects; (g) It failed to perform and direct the work using its best skill and attention for all construc-

---

**3.** The March, 1996 modification states that this contract was signed and dated on July 29, 1993 and uses the word "Original" for the first word as opposed to the word "General."

A review of this contract (Exh. B) illustrates that it was signed in August, 1993 and the first word of the title is "General."

tion means, methods, techniques, sequences, and procedures; (h) It failed to coordinate all portions of the work under the contract properly; (i) It employed persons who lacked the requisite skill and used of machinery [sic] that was incapable of performing the tasks assigned to them; (j) It failed to ensure that all materials and workmanship incorporated into the work were of good quality, free from all faults and defects; (k) It failed to use due care in performing the work under the contact [sic], in particular in setting the pitch of the blades and pin fit; (*l*) It failed to inspect the work properly to determine the existence of any deficiencies; (m) It failed to warn Mead of the deficiencies; (n) It failed to exercise the applicable professional standard of care for the work performed; (o) It allowed and permitted the performance of work and the use of materials that were neither good nor workmanlike; (p) It allowed and permitted the performance of work and the use of materials knowing, or when in the exercise of reasonable care, it should have known, that such work and materials were based on errors and inconsistencies or omissions; (q) It failed to fulfill any and all of its express warranties; (r) It failed to perform the work in a careful, diligent, and workmanlike manner; (s) It failed to perform the work which was the subject of its contact [sic] in accordance with the terms and provisions of the contract; (t) It failed to indemnify Mead for its losses, including attorneys' fees, pursuant to the terms and provisions of the contract.

Complaint at ¶ 16. Each of these items, with the exception of item "t," are the types of items covered by the original warranty and the March, 1996 written modification. Item "t" is also the subject of plaintiffs' second cause of action.

The March, 1996 written modification states that ABB would bring the turbine generator to pre-failure condition and assured "total integrity of installation and warrant[ed] the rebuilt turbine generator for a period of one year[.]" Motion for Summary Judgment, Exh. D. The original warranty covered defects in material and workmanship (Section 4.1) and ensured that the services would be performed in a workmanlike manner (Section 4.2). *See id.,* Exh. H. Thus, these two warranties cover the very things of which plaintiffs complain.

Plaintiffs argue that the warranty provision does not bar their breach of contract claim, and that for the court to accept the defendant's contention that the warranty provision precludes other causes of action would require the court to re-write the contract. *See* Memorandum Contra at pp. 2–3. Plaintiffs are correct that a warranty provision does not bar a breach of contract claim. However, as mentioned *supra,* plaintiffs' breach of contract claim is in substance a breach of warranty claim. This is further supported by plaintiffs' argument that they have asserted allegations that focus on defendant's conduct and therefore have no relevance to warranty issues. Plaintiffs state:

> For example, the Plaintiffs have alleged that the Defendant breached the applicable contract by employing persons who lacked the requisite skill level, by failing to use due care in performing the work under the contract, by failing to properly inspect the work, by failing to warn, by failing to exercise the applicable professional standard of care, by failing to perform the work in accordance with the terms and provisions of the contract, and by failing to indemnify the Plaintiffs.

*Id.* at p. 3. With the exception of the allegation that defendant failed to indemni-

fy plaintiffs [4], the remaining allegations are covered by the warranty provision. The allegations revolve around the installation and performance of the turbine, both of which are covered by the March, 1996 written modification, which states, "ABB will assure total integrity of installation and warrant the rebuilt turbine generator for a period of one (1) year." Motion for Summary Judgment, Exh. D.

The start-up of the turbine occurred on March 12, 1996. Therefore, the March, 1996 written modification expired on March 12, 1997. As discussed *supra,* the relief which plaintiffs seek is covered by the warranties. Since the January, 1998 turbine failure occurred almost ten months after the warranties had expired, ABB may not be held liable under the warranties. Accordingly, this branch of defendant's motion is GRANTED.

## B. *Indemnification*

 Plaintiffs' remaining claim is based on the indemnity provision of the contract. It is plaintiffs' contention that the indemnity provision covers the expenses incurred by Mead as a result of the turbine failure.

This claim, like plaintiffs' breach of contract claim, is in substance a breach of warranty claim. In paragraph twenty of their complaint, plaintiffs state:

> 20. ABB is in breach of said contract with Mead in that it has failed to indemnify Mead from all expenses, costs, charges, damages, and losses (including attorney's fees) caused by the negligence of ABB in one or more of the following particulars:

Complaint at ¶ 20. Plaintiffs then list eighteen "particulars," which are identical to the first eighteen "particulars" asserted in plaintiffs' breach of contract claim. *See id.* In looking past the label of plaintiffs'

indemnification claim, the court finds that the claim is one for breach of warranty. *See Minger,* 239 F.3d at 799.

Plaintiffs' interpretation of the indemnity provision would eviscerate the March, 1996 written modification and its time limitation because plaintiffs' indemnification claim involves the very things that the warranty provision, namely the March, 1996 written modification, covers.

The indemnity provision, Article 16, provides:

> Seller shall indemnify and hold Purchaser and its agents, officers, directors, consignees, employees and representatives harmless from and against all expenses, costs, charges, damages, claims, suits, losses or liabilities (including attorneys fees) of every kind whatsoever to the extent caused by the negligence of the Seller.

Motion for Summary Judgment, Exh. B at p. 10. Plaintiffs claim that under this provision, defendant is liable for damages suffered by plaintiffs as a result of defendant's alleged negligence in one or more of the enumerated "particulars" set forth in paragraph twenty of its complaint.

In its motion for summary judgment, defendant argues that it is not required to indemnify plaintiffs because Mead was not liable to any third parties as a result of the January, 1998 fan blade failure. Defendant relies on Article 31 of the contract, entitled "Limitation of Liability," in support of its argument:

> Except for third party claims for injury (including death therefrom) and claims for third party property damage for which Seller may be liable subject to Indemnity Article 16 hereof and as determined by a court of competent jurisdiction, Seller's aggregate liability here-

---

4. This claim is discussed *infra.*

under for all claims of any nature arising out of this agreement shall in no event exceed the contract price. . . .

Motion for Summary Judgment, Exh. B at p. 16. Defendant argues that this provision limits the indemnity provision to cases involving third-party claims for personal injury or property damage. The court agrees that the indemnity provision in this contract does not apply to the instant dispute between the parties.

The issue to be decided is whether the indemnity provision applies to disputes between the parties themselves. Neither party has cited any case in which a court has held that indemnification provisions are limited to third-party reimbursement situations, nor has either party cited any case in which a court has held that indemnification provisions may be used for disputes arising between the contracting parties themselves. The court has not found a case arising from an Ohio state court in which a court has held that indemnity provisions are applicable to disputes between the contracting parties. Another judge of this court has held that an indemnity provision applies not only to third-party reimbursement situations but also to disputes between the parties themselves. *See Battelle Mem'l Inst. v. Nowsco Pipeline Servs.,* 56 F.Supp.2d 944, 950–51 (S.D.Ohio 1999) (Marbley, J.) [hereinafter *Battelle* ].

In *Battelle,* the court did not cite any Ohio or Sixth Circuit case that explicitly held that indemnity provisions apply to disputes between the contracting parties. Instead, the court based its decision on definitions of "indemnify" found in *Black's Law Dictionary,* Ohio state cases, and Sixth Circuit cases in which the word "indemnify" was defined without reference to third-party reimbursement claims. A review of the cases cited in *Battelle* indicates, however, that not one of those

courts was faced with the issue of whether an indemnity provision was applicable to disputes between the parties themselves. In *Battelle,* Judge Marbley specifically declined to follow the holding of *Ray D. Baker Contractor, Inc. v. Chris Nelsen & Son, Inc.,* 1 Mich.App. 450, 136 N.W.2d 771 (1965), which held that indemnity provisions apply only to third-party reimbursement situations and not to disputes between the contracting parties, because it was a non-Sixth Circuit case. This court is not convinced that indemnification provisions in general should be construed to apply to disputes between the contracting parties. This court is convinced, however, that the indemnity provision *in this case* may not be so interpreted.

There is some conflict as to whether indemnity provisions are limited to indemnity for third-party claims or also include disputes between the parties themselves. Cases holding that indemnity provisions are limited to third-party reimbursement situations include: *City of Dillingham v. CH2M Hill Northwest, Inc.,* 873 P.2d 1271, 1275–76 (Alaska 1994) ([i]ndemnity provides protection against third-party claims, i.e. claims by strangers to the contract); *Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc.,* 694 P.2d 150, 154 (Alaska 1984) ("[t]he contractual provision for indemnification is relevant only in" situations in which one party is "seeking to recover money it has paid to a third party for damages"); *Citizens Ins. Co. of New Jersey v. Signal Ins. Co.,* 261 Or. 294, 493 P.2d 46, 47–48 (1972) (finding that a case of indemnity "requires that a common duty be mutually owed to a third party"); *Ray D. Baker Contractor, Inc.,* 136 N.W.2d at 773 (indemnity provisions have "traditionally been used to indemnify one of the contracting parties against tort liability to third parties"). The Restatement of Resti-

tution also supports the generally accepted meaning of indemnity:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other....

*Restatement of Restitution* § 76 (1937).

Some cases have held that indemnity provisions are not limited to third-party reimbursement situations. *See Litton Microwave Cooking Prods. v. Leviton Mfg. Co.,* 15 F.3d 790, 795–96 (8th Cir.1994) (rejecting defendant's argument that the indemnity provision was not applicable absent a third-party suit); *Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025, 1031–32 (9th Cir.1992) ("[t]he plain, unambiguous meaning of indemnify is not to compensate for losses caused by third parties, but merely to compensate") (quotations omitted); *Battelle Mem'l Inst.,* 56 F.Supp.2d at 950–51 ("indemnification clauses may apply to damage suffered by the contracting parties themselves"); *Moore v. Williams,* 902 F.Supp. 957, 965 (N.D.Iowa 1995) ("[t]he court will not read [a third-party suit requirement] into the indemnity Agreement when none is actually present in the language of the Agreement"); *Circuit City Stores, Inc. v. Citgo Petroleum Corp.,* No. CIV. A. 92–7394, 1995 WL 393721 at *5 (E.D.Pa. June 29, 1995) (finding that the contract did not limit the indemnification provision to third-party claims); *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.,* 382 N.W.2d 156, 160 (Iowa 1986) (rejecting trial court's holding that indemnification provision was limited to third-party claims because the language of the contract did not limit in-

demnification to third-party cases); *Morris v. Snappy Car Rental, Inc.,* 189 A.D.2d 115, 595 N.Y.S.2d 577, 581 (N.Y.App.Div. 1993) ("if [the indemnity provision] contemplated a third-party action as a condition precedent to indemnification, the contract itself" would have to so indicate). However, in none of these cases would the operation of the indemnity provision produce the same result as in the case at bar, to wit, to eviscerate the contract's warranty provision.

Here, although the contract does not specifically state that the indemnity provision is limited to third-party claims, other provisions of the contract indicate that the parties did not intend that it apply to claims between the parties themselves, and most especially not to claims for breach of warranty by the purchaser. First, the language of Article 31, quoted above, indicates the intent that the indemnity provision apply to "third party claims for injury (including death therefrom) and claims for property damage for which seller may be liable subject to [the indemnity provision]." Motion for Summary Judgment, Exh. B at p. 16. Second, the warranty provision of the contract explicitly states that the warranties contained in the warranty provision "are exclusive and in lieu of all other warranties of quality and performance[.]" Motion for Summary Judgment, Exh. H at p. 3. Thus, applying the indemnity provision to a first party breach of warranty claim would eviscerate the "exclusive and in lieu of all other warranties" limitation found in the contract. Further, if this court were to interpret the indemnity provision as plaintiffs would like, then the one-year limit on the March, 1996 written modification would be nullified.[5] When

---

5. In general, such an interpretation of indemnity provisions would completely void any time limitations in warranty provisions because a party who had been damaged by an event covered by a warranty could always bring the same claim under an indemnity provision.

viewing the contract as a whole, it is clear that the parties intended that the March, 1996 repairs would be covered by a one-year warranty. Plaintiffs cannot side-step that time limitation by bringing a claim under the indemnity provision.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in its entirety. The clerk shall enter final judgment in defendant's behalf. Costs shall be taxed to plaintiffs.

It is so ORDERED.